**STATE of Missouri, Respondent,**

v.

**R. D. EVANS, Appellant.**

**No. 52798.**

Supreme Court of Missouri,
Division No. 1.

March 10, 1969.

Motion for Rehearing or to Transfer to
Court En Banc Denied April 14, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Harry J. Mitchell, Spec. Asst. Atty. Gen., Palmyra, for respondent.

Wilson Gray, St. Louis, for appellant.

SEILER, Judge.

Defendant was convicted of first degree murder and sentenced to life imprisonment. He appeals on the ground that the trial court erroneously admitted into evidence his confession, given at a time when he was without counsel and when he says he was not properly warned of his rights as to counsel.

Early Sunday morning, May 15, 1966, a house burned in St. Louis killing defendant's young child. The state's case was that defendant threw a can of gasoline into the house through a window and then ignited the gasoline by throwing in burning paper. The motive seems to have been to cause injury to defendant's "common law" wife, who he thought was asleep in the house, but who was elsewhere. The owner of the house, Charles Morgan, told Patrolman Meyers that defendant started the fire and gave him a description. Meyers started to look for defendant and saw him get out of a taxicab and walk toward the fire. Meyers stopped him, got his name and address, noticed "he had the odor of gasoline all over his hands" and took him to the scene, where defendant identified the child. Then defendant, Meyers, and another police officer entered a police cruiser and drove to the hospital, where a doctor pronounced the child dead. The other policeman then took the body to the morgue and Meyers took defendant with him into the emergency room at the hospital while waiting for another cruiser. Meyers testified as follows:

"Q. Did you speak with him there?

"A. Yes, sir, I did.

"Q. And what, if anything, did he say to you?

"A. Well * * * I asked the gentleman where he had been and he said he had just come back from East St. Louis. * * * I said, you know, Mr. Morgan told me that you were the one that set fire to the house * * * and he said, when did Mr. Morgan tell you that, and I said, right after the fire; he said he had seen you throw the fire bomb inside * * * and he said, well, Officer, I got something to say to you—

" * * *

"MR. GRAY: Now, Your Honor, at this time the witness is going to testify that Mr. Evans said he set the house on fire and I want to object to it * * *

for the reason that at this time Mr. Evans had not been apprised of his rights and he was not arrested—he didn't say he advised him.

" * * *

"THE COURT: Well, I'll sustain the objection with leave to lay a further foundation.

" * * *

"Q. And then * * * did he speak to you?

" * * *

"A. Well, yes, sir * * * he said * * * when did * * * Charlie tell you that I threw the fire bomb in the house and I said, he told me at the scene, at the fire, and * * * he just sat there for about five minutes, or ten, crying, and then * * * he said, Officer, I would like to tell you something.

"Q. And at this time, what, if anything, did you say to him?

"A. * * * I want to tell you something before you say anything at all to me * * * I want to tell you about the rights you have as a citizen of the United States * * * you realize you don't have to say anything and you don't have to make any statement, and, now, any statement you do make could be used against you * * * you know you have a right to make a phone call and you also have a right to an attorney and * * * if you don't have an attorney or can't afford one, I'll get one for you. * * *

" * * *

"MR. GRAY: Your Honor, he has never said yet that this man was under arrest and being charged with this felony.

"THE COURT: It doesn't make any difference whether he is under arrest or not, in view of the officer's testimony.

"MR. GRAY: Well, I believe that he was terribly upset; he acknowledged he had seen this child burned and I'm not sure he understood what the officer was saying to him.

"THE COURT: The officer said he said he understood it. Overruled. That goes to the weight and the officer said that he said he understood it.

"\* \* \*

"Q. And then what happened next— what did he tell you?

"A. Well, he didn't say anything more for about six or seven minutes, and then I said to him, Mr. Evans, did you want to say something to me? And he kept on crying for about, oh, five or six minutes more, and he just kept saying, my baby, my baby, and I said, would you like to have somebody here to talk to, and he said, no, I guess I better tell you, and I said, all right, what did you do, and he said, I burned up my baby, and I said, well, that was terrible, I said, why did you do a nutty thing like that for, and he said he didn't mean to burn up his child, all he wanted to do was to get even with his wife for going out on him—he said he had warned her on several occasions and that he was tired of this and the next time it happened, he told her, she was going, too—and I said, didn't you realize that you might hurt somebody else, and at that time, I said, well, Mr. Evans, I'm going to place you under arrest on suspicion of arson and homicide, and at that time the Sergeant walked—\* \* \*."

Shortly thereafter, Evans made a detailed confession to the sergeant and another officer. He also identified the gasoline can and pointed out the filling station where he bought the gas.

■ The case was tried beginning October 25, 1966, after the effective date of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. The state contends the confession to Officer Meyers was not subject to the Miranda requirements, however, because it was "not made under custodial interrogation", took place at the hospital, and before arrest. We hold otherwise for these reasons: In Miranda, supra, 384 U.S. 1. c. 444, 86 S.Ct. 1. c. 1612, the Supreme Court defined cus-

todial interrogation to " \* \* \* mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way \* \* \*", adding this was what the court meant in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, when it " \* \* \* spoke of an investigation which had focused on an accused." In the case before us Meyers had reasonable grounds for suspecting defendant and was looking for him when he stopped him. Meyers could have arrested defendant under these circumstances without a warrant even before his confession, State v. Sampson (Mo.Sup.), 408 S.W.2d 84, 86. As it was, he took defendant to the scene of the fire, then to the hospital, and then to the emergency room. The questioning there was begun by Officer Meyers, who asked defendant where he had been and then said Morgan told him defendant was the one that set fire to the house. This was not a neutral statement. The circumstances are clear that by this time defendant had been deprived of his freedom. Meyers was not going to let him get away and would have been slack in his duty had he done so.

■ Did the warning given by Officer Meyers meet the requirements of Miranda? It did not. It did not make it clear that he could have an attorney present with him before he answered questions about Morgan's accusation. Also it is subject to the interpretation that if defendant desired a lawyer it would be one selected by Officer Meyers personally. Defendant might have had some doubts as to the advisability of this from his standpoint. Under our adversary system, no one wants to let his opponent select his lawyer. Because of these shortcomings, the offer of counsel was not sufficient.

As stated in State v. Price (Mo.Sup.), 422 S.W.2d 286, 289, "Under *Miranda* police authorities are required to follow scrupulously each and all of four specific procedural safeguards or rights \* \* \*." One of these is the right to have counsel

present at the interrogation and if indigent to have a lawyer appointed.

■ However, the same State v. Price holds that to invoke a specific Miranda-required warning against a confession or its equivalent, a specific objection must be made. That was not done here. Therefore, under the authority of that decision, reinforced by State v. Devoe (Mo.Sup.), 430 S.W.2d 164, the point is not preserved and the judgment is affirmed.

STORCKMAN, J., concurs.

HENLEY, P. J., concurs in result.