463 P.2d 533

**STATE of Arizona, Appellee,**

v.

**Ronald Eugene SHERRON, Appellant.**

**No. 2005.**

Supreme Court of Arizona.

In Banc.

Jan. 9, 1970.

Rolle, Jones & Miller, by H. Stewart Bradshaw, Yuma, for appellant.

Gary K. Nelson, Atty. Gen., Phoenix, and Ronald F. Jones, Yuma County Atty., Yuma, for appellee.

UDALL, Justice:

This is an appeal by Ronald E. Sherron from his conviction of Robbery for which he received a sentence of five to six years.

Appellant first complains that the court below erred in denying his motion to suppress the evidence found by the police officers in the search of his residence. He contends the search was unlawful in that it was made without a warrant, was not incident to an arrest, and was made without securing freely given consent, if consent was given at all. It is conceded that no search warrant was obtained and that the search cannot be justified as incident to an arrest. The facts pertinent to the question of consent are as follows:

On November 10, 1968 at approximately 10:30 at night, the victim, a taxi driver, picked up the appellant as a passenger and drove him to his apartment building. Appellant, who was riding in the back seat, robbed the driver of his wallet and coin changer and then ran from the cab down between two buildings. The victim radioed for the police who arrived shortly thereafter. A few minutes later after having been seen leaving his apartment, appellant was stopped on the street about a block away from the apartments by Officer Huff who testified as follows:

"At that point I stopped the person described to me, I told him that he was not under arrest; however, I would like to have his help, that we had had an armed robbery and I advised him that I would like him to wait with him while I called the victim and the other officer back."

* * * * * *

"Yes, sir. I asked him to approach, to come to me and advised him that there had been an armed robbery, that the oth-er officer assisting on the investigation had asked me to—and I said I would like to have your cooperation, you are not under arrest, however, if you would wait until I called the cab driver over to take a look at you why, it would be greatly appreciated."

* * * * * *

"We asked the subject, Mr. Sherron, where he lived and he said he lived over in the apartments where the officers and the victim had seen him come from. This would have been apartment number three at 2430 Fifth Avenue. We asked the suspect then if he would mind going over to the apartment with us and he said, 'No.' He said, 'I'd be glad to, I want to get this straightened out,' and we proceeded over to the apartment."

* * * * * *

"We went to the apartment where Mr. Sherron was asked if he lived in this apartment. He said that he did. We asked him if he had a key to it and he said, 'No, I don't.' Then, he was asked if he would mind if we could look into the apartment. We asked him, we said we want to get this straightened out so we elicited his cooperation in doing this. He said, 'Fine,' and opened up the door for myself, Officer Reedy and the victim to enter."

* * * * * *

"* * * the other officers and myself went on in and Mr. Shinn followed behind me and Mr. Sherron lead us into the apartment and then he was asked if he would mind if we looked around a little bit. He said, 'No, sir, go ahead.'"

The officers found a knife underneath a shirt which was lying on a chair. The cab driver testified it was the one used in the robbery or one like it. The cab driver's wallet was also found behind the refrigerator.

■■ Although appellant gave contrary testimony as to whether voluntary consent

-was given for the search, the resolution of conflicts in testimony is a function of the trial court. We have consistently held that where there is substantial evidence to support the factual finding of the trial court, we will not disturb that finding on appeal. State v. Denton, 101 Ariz. 455, 420 P.2d 930 (1966); State v. Sanders, 101 Ariz. 410, 420 P.2d 281 (1966). Clearly, Officer Huff's unequivocal testimony is substantial evidence upon which the trial court could find that appellant consented to the search of his apartment.

■ Appellant argues that if his consent was given, it was coerced as a matter of law because he had been taken into custody and had not been advised of his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). It is true that the Miranda warnings are required not only before the interrogation of an arrested suspect at the police station, but also where he has been "otherwise deprived of his freedom of action in any significant way." Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). We think it apparent from the record that appellant was neither in custody nor had his freedom of action been restrained in any way at the time he gave his consent to the search of his apartment. He was not arrested; on the contrary he was specifically told that he was not under arrest. He was not told or directed to do anything, rather his cooperation was requested, being told that it would be greatly appreciated. Appellant voluntarily co-operated, giving the explanation, "I'd be glad to, I want to get this straightened out." Whether he feigned innocence and cooperated in an attempt to dispel suspicion, feeling confident that the wallet and knife were well hidden, we need not speculate. For whatever reason, he gave his consent to the search. There is competent testimony that no restraints were put on his freedom which would in law constitute coercion or necessitate the giving of the Miranda warnings.

Neither *Miranda* nor *Orozco* require that a police officer refrain from speaking to any citizen on the streets without the requisite warning. Neither opinion suggests that a police officer is precluded from asking questions of or eliciting help from bystanders in the general vicinity of a crime. To require that the police arrest everyone to whom they talk in the course of routine police duties would only serve to place an unwarranted burden on both the police and the citizens of the community.

Appellant correctly argues that the state must prove consent by clear and positive evidence by showing unequivocal words or conduct expressing consent. Such has been shown in the instant case by Officer Huff's testimony. We held in State v. Sherrick, 98 Ariz. 46, 402 P.2d 1 (1965), that clear and positive testimony of an officer showing unequivocal words of consent, was sufficient proof despite a direct conflict between his testimony and that of the appellant.

Great weight is placed by appellant on Officer Huff's statement that after the victim had identified appellant, he would have been arrested had he expressed a desire to leave. Unless the officer's thoughts were some way expressed or reflected in his actions, they could not constitute coercion. Mere presence of a police officer does not effect the removal of appellant's ability to voluntarily reach a decision; regardless of what may be going on in the officer's mind. It is appellant's state of mind that is important. Since there were no actions by the officers or any other circumstances that would make appellant feel that he was in custody or that would make him feel any kind of compulsion, we must affirm the lower court's finding that appellant's consent was voluntary. Accordingly, the trial court did not err in denying appellant's motion to suppress.

■ Appellant next contends his rights were prejudiced because he was handcuffed when he was brought to the courtroom and that the jury panel, standing out

in the hallway, saw him with the handcuffs on. Neither appellant nor his counsel contends that he remained shackled during the course of the trial. So far as the record shows he was not manacled inside the courtroom, and what he complains of is the fact that he was moved from the jail to the courtroom with handcuffs on. It has long been recognized that a prisoner coming into court for trial is entitled to make his appearance free of shackles or bonds. However, exceptions to this rule have been made, and in such matters the conduct of the trial rests in the sound discretion of the court. Under the record in the instant case there is nothing to show that the trial court abused this discretion, or that the handcuffs were not removed as soon as safety would permit. State v. Boag, 104 Ariz. 362, 453 P.2d 508 (1969). The rule governing this discretion is succinctly set forth in the case quoted in Boag, supra, McDonald v. United States, 8 Cir.1937, 89 F.2d 128, wherein it is stated:

"* * * It is too obvious for argument that hardly any other matter can be better relegated to the discretion of the trial court than that of safeguarding the court, counsel, jury, and spectators, and assuring the continued presence and attendance of the accused at the trial. Absent incontrovertible evidence of hurt, the trial court should be permitted to use such means, to secure the named ends, as the nature of the case, the known criminal record, character, associates in crime, and reputation of the accused shall reasonably call for, and such is the rule enunciated in the few cases existing which deal with the question * * *."

We find that the trial court did not abuse its discretion in this matter and hence the motion for mistrial was properly denied.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and McFARLAND and HAYS, JJ., concur.