484 P.2d 4

**STATE of Arizona, Appellee,**

v.

**Thomas Henry SCHINDORFF, Appellant.**

**No. 2111.**

Supreme Court of Arizona,
In Banc.
April 22, 1971.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

LOCKWOOD, Justice:

Defendant was charged with the following offenses: Count I assault with a deadly weapon on Brent Parker; Count II assault with a deadly weapon on Donna L. Parker; Count III kidnapping of Donna L. Parker and Brent Parker; Count IV rape of Donna L. Parker; and Count V assault with intent to murder Donna L. Parker. Defendant was tried by a jury and acquitted of Count IV but convicted of Counts I, II, III and V. He was sentenced on Counts I and II to imprisonment for not less than five nor more than ten years on each count, on Count III for not less than thirty years nor more than forty years, and on Count V, for not less than thirty nor more than forty years. Defendant was also charged in the information with a prior conviction of murder in the State of Missouri. Although he denied the prior conviction originally, after his conviction in September 1969 of the charges in the instant case, he withdrew his plea of not guilty to the former conviction and admitted it.

Defendant appeals from his conviction, sentence and denial of motion for new trial. He presents three questions in support of the appeal: (1) Did the trial court prop-

erly instruct the jury with regard to the reasonable doubt standard; (2) under the circumstances can defendant be convicted both of assault with a deadly weapon and of assault with a deadly weapon with intent to murder Donna Parker, and (3) did the trial court make a sufficient finding of voluntariness of defendant's inculpatory statement?

The facts necessary for consideration of defendant's argument are as follows: Donna Parker, a divorcee with several children, kept company with the defendant for approximately eighteen months. A close relationship developed between the two which terminated in a violent argument on December 31, 1968. At about 8:40 A.M. on January 20, 1969 Brent Parker, the sixteen year old son of Donna Parker was awakened by the defendant who had entered the Parker home in Scottsdale, Arizona, after Donna Parker had gone to her place of employment. Defendant had been drinking and he related his troubles to Brent. During this time defendant displayed a .38 caliber revolver and demonstrated that it was loaded. He told Brent to phone his mother as defendant wanted to speak to her. As a result, Donna came home. Although reluctant to come into the house, Donna did so when Brent told her the defendant just came over to talk. Defendant told Brent to "tell my mother what he told me about his past," which Brent did. For some time defendant talked with Donna and Brent. He offered Donna some liquor and when she refused it, he became angry and removed a gun from his pocket and aimed the gun at her. He then aimed it at Brent and told him to shut up. Brent told him to move the barrel, as an accident might happen. The defendant said he knew it was cocked, and that he could blow both of their heads off "right now" if he wanted to.

After this, defendant said they would go for a drive, and told Donna and Brent to go out the door. Brent went, but Donna demurred and the defendant grabbed her by the arm and pushed her out. They got in the car and defendant told Brent to drive. He told them if they drove him to his car, he would leave them "and go and never come back". Instead, defendant directed Brent to drive to a desert area. Brent continued to drive while defendant from time to time made threats and displayed the pistol. Later defendant ordered Brent to stop and told him to get out of the car. Brent complied, and defendant again aimed the gun at him. Brent managed to escape, as the car rolled forward accidentally. He got to a phone and called the police.

Defendant then drove about, still holding Donna at gun point. They traveled until he stopped at the parking lot of the Salt River Project where he put the gun in Donna's neck and forced her head against his penis. He then forced her to submit to sexual relations. Afterward defendant resumed the driving till they came to his car. They transferred to defendant's car, and while defendant drove through a desolated area he held the pistol to Donna's head and twice pulled the trigger but the gun misfired. A third attempt to fire the gun out of the window was successful. Defendant threw the three shells out of the car and reloaded the gun. These bullets were retrieved by the police and introduced in evidence, with expert testimony that the impression of the firing pin on each indicated they came from defendant's gun. Police converged on the area, and defendant eluded them in his car. At one point when he slowed somewhat Donna escaped and ran to a nearby police car, which pursued defendant's car until the police car collided with a sheriff's car and became disabled.

At about 12:30 P.M. of the same day Officer Starr and Detective Author of the Scottsdale Police, both in plain clothes and in an unmarked car, arrived in the general vicinity where defendant was believed to be. They had only a description of the automobile. However when Officer Starr noticed a man walking toward the rear of a house he decided to question the man. He stopped his car and walked

toward the man calling out "Hey, wait a minute." The defendant immediately responded "you have got me, you have got me, you have got me, officer" and started walking toward the officer with his hands in the air. Defendant then drew his pistol, and the officer did likewise. Defendant aimed first at the officer and then placed the gun to his own head and said "shoot me, shoot me, I won't hurt you guys." The officers approached defendant from both sides, and after a brief struggle were able to disarm and arrest him.

During his trial defendant did not testify. His attorney offered no testimony or other evidence, but vigorously cross-examined the state's witnesses as they testified. The court refused defendant's proposed instruction on the reasonable doubt standard and over defendant's objection gave what was then Maricopa County Jury Instruction No. 204. The court also added the phrase:

"Under the evidence in this case and the instructions which have been given to you, if you find beyond a reasonable doubt that the defendant committed the crime charged in the Information, then you should find the defendant guilty. If you do not find beyond a reasonable doubt that the crime charged in the Information was committed by the defendant, then you should find the defendant not guilty."

The last paragraph of MARJI No. 204 was omitted in November, 1969 by the Maricopa County Superior Court, following our decision in State v. Mays, 105 Ariz. 47, 459 P.2d 307 (Oct. 1969), where we said:

"We need not decide whether, upon proper objection, it would be reversible error not to strike the last paragraph of this instruction. We merely hold that when read together with the preceding paragraphs, which undoubtedly define reasonable doubt in traditionally acceptable terms, it is not so misleading as to constitute fundamental error."

We hold that the giving of MARJI No. 204, including the now defunct last paragraph thereof, together with the additional phrase contained sufficient language defining "reasonable doubt" in traditionally acceptable terms, and was not so misleading as to be prejudicial error.

We do not agree with defendant's contention that the crime in Count II was merged in or was a lesser included offense of Count V violative of § 13–145.[1] Actually under the circumstances here, more than one act was involved even though each act occurred within a connected time sequence. Each contained the proscribed elements of a separate crime. State v. Boag, 104 Ariz. 362, 453 P.2d 508. The assault with a deadly weapon upon Donna which occurred at the house when defendant became angry at Donna's refusal to drink liquor was a separate act from the assault with a deadly weapon with intent to murder which occurred later in the automobile. The use of the gun to compel both Donna and Brent to accompany the defendant in the car was a part of and merged in the crime of kidnapping. The same principle obtains in defendant's use of the gun in the alleged rape. However, when defendant attempted to shoot Donna later, when the gun failed to fire, this was a completely severable offense constituting assault with intent to murder, without regard to the original assaults, the kidnapping or alleged rape.

In the opening statement the deputy county attorney indicated that defendant had made some sort of inculpatory statement to Officer Starr at the time of the arrest. Defense counsel asked that a

---

1. A.R.S. § 13–145 *"Former jeopardy or acquittal as bar to same or lesser offenses*: When the defendant is convicted or acquitted, or has once been placed in jeopardy upon an indictment or information, the conviction, acquittal or jeopardy is a bar to another indictment or information for the offense charged in either, or for an attempt to commit the offense, or for any offense necessarily included therein, of which he might have been convicted under the indictment or information."

 

voluntariness hearing be held outside the presence of the jury and moved for a mistrial. At the hearing Starr testified that defendant in response to his request that he wait a minute answered, "you have got me, you have got me, you have got me, officer." When the hearing concluded the trial court made the following ruling:

"That is why I mentioned procedurally it was not the best approach for counsel to comment [in opening statement to the jury] on something like this that could possibly be treated in the area of statements made to a policeman while in custody. But I don't think we have a custodial situation here. So the Court would rule this would be admissible. So on the basis of this ruling, counsel having mentioned it in opening argument, it is now moot."

Defendant contends that the court did not make a definite determination that anything said by defendant to Starr was voluntary and therefore failed to meet the standard set by this court in State v. Costello, 97 Ariz. 220, 399 P.2d 119. Costello, supra, dealt with a signed confession and was an in-custody interrogation. Defendant here was not in custody. Officer Starr testified that he was looking for a car but had no knowledge of who was in the car, or whether male or female and that seeing an individual in the vicinity, the officer merely wanted to ask him some questions in pursuance of routine investigation. As this Court said in State v. Sherron, 105 Ariz. 277, 463 P.2d 533, when speaking of constitutional rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 and Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311:

"Neither Miranda nor Orozco require that a police officer refrain from speaking to any citizen on the streets without the requisite warning. Neither opinion suggests that a police officer is precluded from asking questions of or eliciting help from bystanders in the general vicinity of a crime. To require that the police arrest everyone to whom they talk in the course of routine police du-

ties would only serve to place an unwarranted burden on both the police and the citizens of the community." 105 Ariz. at 279, 463 P.2d at 535.

We fail to see that the defendant's exclamation "you have got me, you have got me, you have got me, officer" was in any way inculpatory. The words were not even responsive to the officer's request that defendant wait a minute. Nor could they have been subject to any Miranda warnings.

Defendant was not in custody nor had suspicion begun to focus upon him, and the court concluded defendant's statements therefore were voluntary. The court's instruction to the jury to make its own determination as to whether the statements were voluntary was therefore harmless.

Judgment affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and CAMERON, JJ., concur.