505 P.2d 248

**STATE of Arizona, Appellee,**

v.

**Nathaniel BAINCH, Appellant.**

**No. 2262.**

Supreme Court of Arizona,
In Banc.

Jan. 18, 1973.

Gary K. Nelson, Atty. Gen., by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HOLOHAN, Justice:

The defendant, Nathaniel Bainch, was tried and found guilty of robbery. He appeals from the judgment of conviction and sentence of five to six years in prison.

The record discloses that on July 3, 1970, Pedro Iglesias, an 80-year-old man, had been shopping at a J. C. Penney store in Phoenix. He was sitting on the sidewalk, with a shopping bag full of purchases at his side, waiting for a bus to take him back to his home in Glendale. A man, subsequently identified as the defendant, Nathaniel Bainch, suddenly "grabbed" the bag from Iglesias, and threatened him with a drawn knife. Iglesias attempted to get his bag back, but was cut on the arm by the knife, and pushed down into the street. The assailant fled, but Iglesias followed and saw him enter a tavern. Iglesias then summoned two nearby police officers. Upon entering the tavern he pointed to Bainch, the defendant, who was seated therein, and stated:

"That is the man that took my bag. That is the bag right there."

A blue J. C. Penney bag was observed leaning against Bainch's feet. The officer asked:

"Is that your bag?"

Bainch answered:

"Yes, I bought it from a man."

Subsequent examination disclosed that the bag contained a welfare check made out to Igelsias, as well as the items he had purchased.

The defendant was arrested, tried, and on the strength of these facts, the jury returned a guilty verdict on the robbery charges.

On appeal, the defendant contends that the trial court erred in two matters:

(1) Admission of his statement to police officers that he had "bought" the bag; and,

(2) Denial of his motion to suppress an in-court identification on the grounds that prior to trial the police has shown only his photograph to the victim.

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held:

". . . the prosecution may not use statements, whether exculpatory or incul-patory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

At the outset, we note that the statement "I bought it from a man" is neither a confession nor an inculpatory admission, as is customarily found in cases in which Miranda is invoked. In fact, the statement is consistent with defendant's later testimony that during the approximately five-minute interval between robbery and arrest he had bought the bag from an unnamed serviceman passing through town. We note from the language above that Miranda bars use of "exculpatory" statements as well. The statement by the defendant in response to the question by the police officer is potentially inadmissible under Miranda, provided, of course, that the interrogation was "custodial."

The trial court held a voluntariness hearing and concluded that the defendant was not in custody at the time the statement was made.

The question of when "custodial interrogation" begins was defined by Chief Justice Warren in Miranda as:

". . . after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

In Orozco v. Texas, 394 U.S. 324, 89 S. Ct. 1095, 22 L.Ed.2d 311 (1969), the court held that the Miranda warnings were required before a statement was admissible in all instances of in-custody questioning even outside the police station. A person under arrest and not free to leave the presence of the officer was in custody.

The federal Supreme Court did distinguish between investigation and in-custody interrogation:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our

holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725.

Since *Miranda* the "focus of the investigation" test of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), has been supplanted or redefined to equate it with the custodial interrogation test. Custody is now the crucial issue in determining whether Miranda warnings are necessary before a statement by defendant may be received in evidence against him. See State v. Mumbaugh, 107 Ariz. 589, 491 P.2d 443 (1971).

The facts in this case are similar to those in State v. Sherron, 105 Ariz. 277, 463 P.2d 533 (1970). The appellant in the cited case contended that his consent to a search by police officers was not voluntary because the consent had been obtained without having been advised of his constitutional rights pursuant to *Miranda*. The officers had questioned Sherron without first giving the Miranda warnings, but the officers had advised him that he was not under arrest and no restraint was used. It was clear that Sherron was a suspect, but the officers had not taken him into custody. In approving the admission of both the conversations with Sherron and the items found after the "consent" search, the court said:

"Neither *Miranda* nor *Orozco* require that a police officer refrain from speaking to any citizen on the streets without the requisite warning. Neither opinion suggests that a police officer is precluded from asking questions of or eliciting help from bystanders in the general vicinity of a crime." 105 Ariz. at 279, 463 P.2d at 535.

The fact that an officer may be suspicious of an individual is not the test as to whether Miranda warnings must be given prior to questioning, nor is the mere presence of a police officer to be considered a restraint on the suspect's liberty. The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint. In the latter instance the Miranda warnings are required to be given before the statements of the defendant may be received in evidence against him.

On the facts of this case, we find it clear that the defendant was not in custody when he responded to the officer's question "Is that your bag?" The location of the questioning was a tavern which the defendant had voluntarily entered. The officers had not placed him under arrest, nor had any weapons been drawn. The questioning was extremely brief and spontaneous, and it served to determine if this particular man, through his connection with the bag, should be the subject of further inquiry after a Miranda warning. This case is clearly distinguishable from State v. Evans, 439 S.W.2d 170 (Mo.1969), and Johnson v. Commonwealth, 208 Va. 740, 160 S.E.2d 793 (1968), the authorities cited by appellant. In *Evans,* the police officer took the defendant, suspected of murder by arson, to the scene of the fire, then to the hospital, then to the emergency room. He questioned him, and stated that a witness had accused him of setting the fire. Finally, a defective Miranda warning was given and the defendant confessed. In *Johnson,* the defendant was taken from his home at 3 o'clock in the morning, questioned by the sheriff's office for half an hour, returned home with instructions "not to leave the house," taken out by law officers the following day to the scene of the crime, questioned further, taken to the sheriff's office again, and questioned again, whereupon he confessed. These two precedents are inapplicable to the facts of this case where the police officer briefly

asked defendant, sitting in a tavern, whether a bag near his feet was his.

We hold that the brief conversation in this case comes within the scope of "general on-the-scene questioning" permissible under *Miranda* without the necessity of advising the subject of his rights.

The appellant also argues that it was error for the trial court to rule that the in-court identification was not tainted, on the grounds that prior to trial the police had shown the victim a photograph of the defendant and identified him as the robber.

This Court, in State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), established the following principle:

". . . if it can be determined from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures or from evidence beyond a reasonable doubt that it was harmless, and there is otherwise no error, the conviction will be affirmed." 104 Ariz. at 384, 453 P.2d at 955.

■ An in-court identification is not tainted if it has "an independent source," State v. Dessureault, *supra*.

■ We find no error in the trial court's ruling that the identification was based on an independent source. The victim, Iglesias, specifically pointed out the defendant to police officers in the tavern shortly after the robbery, singling him out from other people in the bar and from another Negro man sitting next to him. He watched while the defendant was led into the street and arrested, and the contents of the bag removed and identified, all in broad daylight. He stated emphatically in chambers that he could remember the defendant clearly even if he had not been shown the picture, and he commented that the picture shown him was not a very good picture of the defendant.

We conclude that the trial court could properly find the in-court identification to be free from taint.

No other error appearing on close examination of the record, the judgment of conviction and sentence are affirmed.

Affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER, and LOCKWOOD, JJ., concur.