301 So.2d 859 (1974)
Cornelia Bass ROBERTS
v.
STATE of Mississippi.
No. 47845.
Supreme Court of Mississippi.
October 21, 1974.
*860 S.E. Allen, Jr., Hazlehurst, for appellant.
A.F. Summer, Atty. Gen. by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
This is an appeal from the Circuit Court of Copiah County. The defendant was convicted of the crime of aiding a felon in escaping from jail and was sentenced to serve a term of five years in the Mississippi State Penitentiary.
On January 12, 1973, the Sheriff of Copiah County was sitting in his courthouse office when he heard a "funny noise." Upon hearing the same noise a second time, the sheriff and two deputies made their way to the cell block area to investigate and found James Roberts, a prisoner, sawing at the bars of his cell window with a hacksaw blade. Roberts had completely sawed through one bar and was working on the second when he was discovered. The sheriff and deputies searched Roberts' cell and found four broken hacksaw blades, two complete hacksaw blades and two wrenches. The hacksaw blades bore the brand names Blue Grass and Black Diamond while one wrench was manufactured by Thorson and the other by Challenger. The sheriff testified that he could remember no one visiting Roberts in jail except Roberts' mother and wife, the defendant Cornelia Roberts. The latter had visited *861 Roberts on January 9, 1973, three days before Roberts was discovered attempting to escape.
F.A. McCoy, proprietor of a local hardware store, testified that sometime during the month of January, 1973, the defendant bought some hacksaw blades in his store. McCoy himself waited on the defendant on this occasion. The defendant returned to the store a day later and purchased additional hacksaw blades and a wrench. McCoy, however, did not wait on the defendant on this occasion and did not know the name brand of wrench she had bought. Although McCoy stated that his store sells Blue Grass and Black Diamond hacksaw blades as well as Challenger wrenches, he could not positively identify the blades and wrenches found in Roberts' cell as having been bought in his store.
The defendant signed a written confession which was held to be voluntary and admissible following a hearing on the defendant's motion to suppress. The principal issue is whether or not the confession was legally obtained.
During the hearing on the motion to suppress the confession, the sheriff testified that Roberts told him that the only persons who had visited him in jail were his mother and his wife. The sheriff stated that Roberts' mother and the defendant "were the only prospects I could think of," and so the sheriff went to the defendant's home and asked to speak with her. When they walked out into the front yard, the sheriff, without warning defendant of her rights, asked her if she had taken hacksaw blades to her husband in jail. When the defendant replied that she had not, the sheriff told her: "Your husband has practically admitted you or his mother brought the blades to the jail." Following this, the defendant said: "I brought the blades to the jail; his mother didn't have anything to do with it." The defendant then admitted that she had bought the blades at Biggs' Hardware store. At this point the sheriff advised the defendant that she need not say anything else, placed her under arrest and did not interrogate her further until he had placed her in jail.
At the jail the sheriff gave the defendant the Miranda warnings and the defendant stated that she did not want a lawyer. The defendant then confessed to the crime while the sheriff took notes. A statement was later typed from the sheriff's notes and was read to the defendant, who, after reading the statement, signed it.
The defendant argues that, because the sheriff failed to warn her of her rights prior to the interrogation at her home, the statement signed later at the jail was "fruit of the poisonous tree" and its admission into evidence was error.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a person must be given a four-fold warning of his right to the privilege against self-incrimination before any custodial interrogation by the police. The Court defined custodial interrogation as follows:
By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706).
It is unquestioned that the Miranda warning must be given after a person is arrested or physically detained prior to questioning. However, murky waters are encountered in situations where, as in the instant case, a suspect is questioned before detention or arrest by an officer who probably intends to arrest him but has not done so at the time of the questioning.
A careful reading of Miranda reveals that the United States Supreme Court condemned and attempted to eradicate the incommunicado interrogation of a person in a police-dominated atmosphere. In Miranda the Court quoted at length *862 from a police manual describing the compelling psychological forces with which officers may coerce a suspect during interrogation, and noted that in the past incommunicado interrogation was marked by beatings and brutality.
This is not to say that menacing police interrogation, of the type condemned by the Court in Miranda, cannot occur outside the confines of the station house. In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), four police officers went to the room of Orozco and found him asleep in bed. The officers questioned Orozco who remained in bed, admitted ownership of a pistol that had been used in a murder and told the officers where the pistol was located. The officers testified that, although Orozco was in his own home and was in his own bed when interrogated, he was not free to go where he wished but was under arrest when the interrogation was initiated. The Court held that under these facts the use by the state of Orozco's admissions violated his right against self-incrimination as construed in Miranda. The Court reaffirmed the absolute necessity for officers interrogating persons in custody to give the required warnings and concluded that since Orozco was not free to leave, the Miranda warnings should have been given despite the fact that he was interrogated in his own room.
In sum it may be said that any custodial interrogation of a person, wherever it occurs, must be preceded by giving the Miranda warnings. The question for resolution in the case at bar, then, is: Did the questioning of the defendant by the sheriff in the front yard of the defendant's home amount to a custodial interrogation within the meaning of Miranda?
People v. P. (Anonymous), 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (1967) is persuasive on the issue presented in the case before us. In People v. P., a youth arrested for car theft, told police that the defendant was his accomplice in the crime. With the first youth in custody, the police went to the defendant's home where they found three boys outside the dwelling. A detective asked if any one of them was Rodney P.; when the defendant identified himself, the other boys were requested to leave. The officer then questioned the defendant about whether or not he had been in the company of the first youth that afternoon and whether or not he had been involved in stealing a car. The defendant admitted the crime. No warning of the defendant's constitutional rights was given prior to the questioning by the officer. The New York Court of Appeals determined that the detective's questioning of the defendant did not amount to a custodial interrogation, requiring the Miranda warnings, because: (1) the defendant was not physically restrained in any way; (2) the defendant was not led, as a reasonable person, to believe that his freedom of action was restrained in any way. The Court rejected the defendant's argument that questioning by a police officer  without more  constitutes a significant restraint on a person's freedom, and stated:
There are, it is true, few people who would feel free to walk away from a police officer who stopped to question them. Some, hopefully most, would feel restrained out of respect for an officer of the law who is, after all, their servant and protector. Others, unfortunately, would feel restrained by fear of a police officer. But it is not any and every restraint  less actual custody or physical detention  which requires that warnings be given before questions are asked, only a significant restraint. And since, as a practical matter, a person's freedom is restrained or it is not, and he either feels free or does not, we believe that, in prefacing the word "restraint" with the adjective "significant", the Supreme Court intended that the warnings be given when the questioning takes place under circumstances which are likely to affect substantially the individual's "will to resist and compel him to speak where he would not otherwise do so freely." *863 (Miranda v. State of Arizona, supra; Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374, supra). Such circumstances were not present here. (21 N.Y.2d at 11, 286 N.Y.S.2d at 234, 233 N.E.2d at 261).
Cases with similar holdings are:. State v. Crossen, 10 Or. App. 442, 499 P.2d 1357 (1972); State v. McDonald, 190 N.W.2d 402 (Iowa 1971); State v. Bower, 73 Wash.2d 634, 440 P.2d 167 (1968); People v. Merchant, 260 Cal. App.2d 875, 67 Cal. Rptr. 459 (1968), and People v. Schwartz, 53 Misc.2d 635, 279 N.Y.S.2d 477 (1967).
The key to determining if the questioning of a person is a custodial interrogation within the meaning of Miranda is whether the defendant is deprived of his freedom of action in any significant manner and whether he is aware of such restraint. In State v. Bainch, 109 Ariz. 77, 505 P.2d 248 (1973), the Arizona Court stated:
The fact that an officer may be suspicious of an individual is not the test as to whether Miranda warnings must be given prior to questioning, nor is the mere presence of a police officer to be considered a restraint on the suspect's liberty. The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint. In the latter instance the Miranda warnings are required to be given before the statements of the defendant may be received in evidence against him. (505 P.2d at 250).
In the case at bar, the defendant had not been arrested, nor was she deprived of her freedom of action in any significant manner when she responded to the sheriff's questions. The questioning took place in the yard in front of her home, and she was not aware of any restraint on her freedom of action. Under these circumstances, there was no requirement that the sheriff give defendant the Miranda warning prior to questioning. We hold that defendant's confession was voluntary, legally obtained, and properly admitted into evidence.
The defendant's arguments in her second, third and fourth assignments of error are predicated on the assumption that the oral confession was illegally obtained. Our decision on that issue makes it unnecessary to consider these assignments of error.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER and SMITH, JJ., concur.