OPINION
JONES, Judge:
¶ 1 Carlos Maciel appeals his conviction and sentence on one count of burglary in the third degree. Maciel contends the trial court erred in denying his motions: (1) to suppress his statements to police, and (2) for judgment of acquittal on the basis that the State failed to establish the corpus delicti. For reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2 On April 10, 2013, a motorist observed Maciel seated next to a vacant building with a broken window. The motorist noticed the board that previously covered the broken window had been removed and, aware of prior break-ins at the building, called the police. An officer was dispatched to what was reported as a possible burglary.
¶ 3 Upon arrival, and after speaking with the motorist, the officer contacted Maciel, who was still seated a few feet from the broken window, obtained his identification, and conducted a pat-down search for weapons. Finding no weapons on or outstanding warrants for Maciel, the officer asked him “what he was doing” and if he knew “how the board got removed from the window.” Maciel replied that he was just sitting down and denied any knowledge of the board being removed from the window. The officer asked Maciel to sit in his patrol vehicle until another officer arrived at the scene. A second officer arrived within minutes, and Maciel was then asked to sit on the curb next to the building while the second officer stood nearby. Maciel complied with the officer’s requests.
¶ 4 The pastor of the church on the property adjoining the vacant building arrived and advised that the board had been in place over the broken window three days earlier. With that additional information, the first officer again asked Maciel about the window. Without further prompting, Maciel admitted removing the board the day before and entering the building to look for money. He stated that another male told him to go inside, but Maciel alone had entered the building. Maciel was then placed under arrest, handcuffed, and placed in the patrol vehicle.
¶ 5 Two officers then entered the building to search for evidence of a burglary or persons possibly still in the building. Shoe prints inside did not match the shoes worn by Maciel at the time of his arrest, and there was no other evidence of entry. The pastor was unable to identify anything missing or stolen.
¶ 6 Then, the first officer went back to the patrol vehicle, advised Maciel of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and again asked him about going into the building. Maciel again reported he removed the board and entered the building. Maciel stated he pulled the board off “by hand,” and when he was advised the shoe prints inside did not match his shoes, Maciel stated “he hadn’t gone in very far.” The entire investigation lasted approximately one hour.
¶ 7 Following a jury trial, Maciel was convicted of one count of burglary in the third *203 degree. The trial court suspended the sentence, placed Maciel on intensive probation for thirty-six months, and ordered him to serve thirty days in jail as a condition of probation. Maciel timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[1] 13-4031, and -4033(A)(1).
DISCUSSION
I. Motion to Suppress
¶ 8 Before trial, Maciel moved to suppress his statements to the police, arguing the officer engaged in an improper “two-step” interrogation process by deliberately soliciting incriminating statements from him while he was in custody but prior to providing Miranda warmings, and then re-soliciting those same statements after he was arrested, in violation of Missouri v. Seibert, 542 U.S. 600, 604, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). Following an evidentiary hearing, the trial court determined Maeiel’s statements were voluntary. It further found Maciel’s pre-Miranda statements were not obtained during a custodial interrogation, but rather resulted from permissible “on-theseene questioning.”
¶ 9 In doing so, the trial court specifically rejected Maeiel’s two-step Miranda violation argument, finding the questioning during the on-scene investigation did not constitute a “first Miranda violation,” and there was no evidence the officer intended to engage in improper or coercive tactics. The court reasoned: “The second questioning [at the curb] had come after [the officer] knew somewhat more about the circumstances,” had “some questions” about the truthfulness of Maciel’s initial statements, and was “simply following up.” The court noted favorably that “[a]s soon as [Maciel] made statements that gave the officer probable cause for arrest, he ceased questioning, and then before he reinitiated questioning, he advised [Maciel] of his Miranda rights.” Thus, the court concluded all of Maciel’s statements were admissible.
¶ 10 Maciel argues on appeal that the trial court’s ruling is erroneous, and his statements were both involuntary and obtained in violation of Miranda. We review the trial court’s decision to admit statements of a defendant for an abuse of discretion. State v. Ellison, 213 Ariz. 116, 126, ¶ 25, 140 P.3d 899, 909 (2006) (citing State v. Jones, 203 Ariz. 1, 5, ¶ 8, 49 P.3d 273, 277 (2002)). In doing so, we consider only the evidence presented at the suppression hearing and view it in the light most favorable to upholding the trial court’s ruling. Id. (citing State v. Hyde, 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996)). We defer to the trial court’s factual findings, but review its legal conclusions de novo. State v. Box, 205 Ariz. 492, 495, ¶ 7, 73 P.3d 623, 625 (App.2003) (citing State v. Valle, 196 Ariz. 324, 326, ¶ 6, 996 P.2d 125, 127 (App.2000)).
A. Maciel Was Not in Custody During the Officer’s Initial Inquiry or While Waiting at the Curb.
¶ 11 Before police engage in “custodial interrogation,” or “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,” the suspect must be given a Miranda warning. State v. Kennedy, 116 Ariz. 566, 568-69, 570 P.2d 508, 510-11 (App. 1977) (citing Miranda, 384 U.S. at 444, 86 S.Ct. 1602, and State v. Bainch, 109 Ariz. 77, 79, 505 P.2d 248, 250 (1973)). While the circumstances of each ease will determine whether a suspect is in custody for the purpose of triggering Miranda warnings, being “in custody” is an objective condition with “the ultimate inquiry [being] simply whether there is a ‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.” State v. Cruz-Mata, 138 Ariz. 370, 372-73, 674 P.2d 1368, 1370-71 (1983) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)); see also Kennedy, 116 Ariz. at 569, 570 P.2d at 511 (“‘The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint.’”) *204 (quoting Bainch, 109 Ariz. at 79, 505 P.2d at 250).
¶ 12 When determining whether questioning is actually custodial, there is no one factor that controls whether a person is in custody; rather, we consider objective factors, the most important being: (1) the site of the interrogation; (2) whether objective indicia of arrest are present; and (3) the length and form of the interrogation. CruzMata, 138 Ariz. at 373, 674 P.2d at 1371 (approving three of four factors identified in Kennedy). In our consideration of these factors, we bear in mind the purpose of Miranda warnings: to curtail involuntary admissions elicited through mental or physical intimidation. See Kennedy, 116 Ariz. at 569, 570 P.2d at 511 (citing State v. Tellez, 6 Ariz.App. 251, 255, 431 P.2d 691 (1967)).
¶ 13 Maciel first disputes the trial court’s findings that he was not in custody either when he was asked to sit in the patrol vehicle or when he was thereafter asked to sit at the curb. However, the transcript of the hearing demonstrates the court fully considered the circumstances before concluding that Maciel was not in custody prior to his formal arrest. The record supports this conclusion.
¶ 14 At the suppression hearing, the officer testified he was initially the only officer on the scene and had no idea whether Maciel was involved in any crime or whether there was anyone inside the building. He therefore asked Maciel to sit in the patrol vehicle for “both of our safety,” explaining they both would be in danger if an armed person emerged from the building. Maciel was not handcuffed, was not escorted to or placed in the patrol vehicle by the officer, and was not under arrest. The officer did not question Maciel while he was in the patrol vehicle, but simply “watch[ed] the building just to see if anyone came out.” Within minutes, another officer arrived, and the first officer asked Maciel to exit the patrol vehicle and sit on the curb next to the building while the other officer stood nearby.
¶ 15 In Cruz-Mata, our supreme court affirmed a trial court’s ruling that a defendant was not in custody where he agreed to accompany an officer to the police station for questioning, was transported in a patrol vehicle, and was questioned for approximately ninety minutes before confessing. 138 Ariz. at 373, 674 P.2d at 1371. Although a police station could be considered a “coercive environment,” the court found no other objective indicia of arrest: “Defendant was not subjected to the booking process, nor were physical restraints such as handcuffs used, nor was a weapon drawn.” Id. The court further noted “no force, threat[] or other compulsion” was used to elicit responses. Id. This analysis compels a similar conclusion here.
¶ 16 The trial court found the officer’s initial questions to Maciel were not an interrogation but rather, reasonable “on-the-scene questioning” to assess the situation. See State v. Morse, 127 Ariz. 25, 28, 617 P.2d 1141, 1144 (1980) (excluding general, on-the-scene questioning during a criminal investigation from the definition of custodial interrogation). The record is clear that Maciel was near the broken window when the motorist made his report and remained there when the officer arrived. As the only law enforcement officer at the scene of an alleged burglary, it was an appropriate first step for the officer to ask Maciel what he knew about the removal of the board, just as the officer questioned the pastor as to the issue upon his arrival.
¶ 17 Once the officer observed evidence of a potential illegal entry, the building and the surrounding area became the scene of a criminal investigation over which he was in control. Rather than direct Maciel to leave the crime scene or allow him to continue to sit by the open window when an intruder might still be inside, the officer asked Maciel to sit in the patrol vehicle where the officer believed he would be safer. The trial court accepted the officer’s testimony, and we defer to its assessment of witness credibility, especially where, as here, none of the objective indicia of arrest were present. See Pima Cnty. Juv. Action No. 63212-2, 129 Ariz. 371, 375, 631 P.2d 526, 530 (1981) (“The deference which appellate courts accord the trier of fact, whether judge or jury, to make determinations based on assessments of the credibility of witnesses is elementary.”) (citations omitted). Moreover, the record sup *205 ports the determination that safety was the officer’s concern.[2] Following his direction to Maciel, the officer did not, himself, breach the building but simply watched and waited to enter until another officer arrived, asking no further questions of Maciel throughout that period. The court implicitly found Maciel was not in custody while in the patrol vehicle, and the conclusion is supported by the record. See State v. Zamora, 220 Ariz. 63, 67, ¶ 7, 202 P.3d 528, 532 (App.2009) (noting we will infer findings necessary to affirm the trial court as long as there is no conflict with any express findings) (citing State v. Ossana, 199 Ariz. 459, 461, ¶8, 18 P.3d 1258, 1260 (App.2001), and Coronado Co. v. Jacome’s Dep’t Store, Inc., 129 Ariz. 137,139, 629 P.2d 553, 555 (App.1981)).
¶ 18 Turning to the curb-side questioning, the record shows the trial court fully considered the cumulative effect of Maciel’s interactions with the police before considering whether he was in custody while sitting at the curb. The court began its analysis by noting Maciel had been in the patrol vehicle for safety reasons and had not been handcuffed, reiterating its conclusion that Maciel was not then in custody. After considering anew the relevant “indicia of custody,” the court then determined Maciel was likewise not in custody while sitting at the curb. Again, Maciel was not handcuffed or told he was under arrest, no weapons were drawn, no physical force was used, and there was nothing coercive or inherently threatening about the curb itself. There is nothing in the record to suggest the second officer was directed to treat Maciel as if he were in custody or that the second officer believed Maciel to be in custody. Nor can the testimony that Maciel “sat by the building with [the second officer],” viewed in the light most favorable to upholding the conviction, reasonably support the dissent’s statements, infra ¶¶ 36, 44, that the second officer “stood guard” or “watched over” Maciel while he sat on the curb. Additionally, the “length and form of the interrogation,” consisting of “two or three questions” that lasted “a few moments, at most,” did not objectively indicate Maciel was in custody. The court thus concluded, “[gjiven all of those circumstances ... the questioning that took place in the second part of the interrogation after [Maciel] had been taken out of the police car and seated on the curb was not a custodial interrogation.”
¶ 19 Again, the record reflects the area remained an active crime scene. It was reasonable for the officer to control the movement of any persons within the area when he did not and could not have known who or what danger may have been inside. Having Maciel remain at the curb with an officer who could prevent him from wandering around the crime scene provided a degree of safety to everyone. Cf. State v. Johnson, 220 Ariz. 551, 557, 207 P.3d 804, 810 (App.2009) (noting law enforcement officer “must be able to control the scene of a traffic stop to protect the driver, passengers, and the public in general”) (citing Arizona v. Johnson, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009)).
¶ 20 Moreover, the curb-side questioning occurred only after the officer was advised by the pastor that the board had been on the window three days earlier. It was not improper for the officer, armed with additional information, to return to Maciel and attempt to further narrow the timeframe during which the board may have been removed and the crime committed. Maciel then, without further prompting, admitted removing the board. With that, the questioning of Maciel ceased and he was placed under arrest. In the absence of any testimony or evidence that Maciel was improperly compelled to answer the officer’s questions, the trial court’s determination that Maciel was not in custody at the time the first officer asked him for additional information is supported by the evidence.[3]
*206 B. The Officer Did Not Engage in a Two-Step Interrogation Process Under Seibert or Elstad.
¶ 21 The trial court next considered Maciel’s argument that the officer engaged in a two-step interrogation process prohibited by Seibert — -the first occurring at the curb, and the second following Maciel’s formal arrest. In Seibert, the U.S. Supreme Court examined the propriety of a police protocol whereby officers were instructed not to give Miranda warnings until their interrogation produced a confession that, although admittedly inadmissible, was then used to coerce “the suspect to cover the same ground[] a second time” after Miranda warnings were given. 542 U.S. at 604, 124 S.Ct. 2601. A plurality of the Supreme Court held: “The impression that the further questioning was a mere continuation of the earlier questions and responses” creates a coercive environment, depriving a reasonable person of a true sense of choice to remain silent. Id. at 616— 17, 124 S.Ct. 2601. Therefore, post-warning statements obtained in such a fashion are inadmissible. Id.
¶ 22 We find no merit in Maeiel’s argument. First, having concluded there was no “first Miranda violation” because Maciel was not in custody during the curb-side questioning, there cannot, by definition, have been a second Miranda violation that would implicate the two-step interrogation process discussed in Seibert. See supra ¶¶ 18-20.
¶ 23 Second, even assuming Maciel was in custody during the curb-side questioning, no evidence was presented to suggest either the police depai’tment generally, or the officer individually, engaged in any deliberate tactic to withhold Miranda warnings, or that the officer used pi-e-Miranda statements to pressure Maciel dui'ing the post-Miranda questioning. To the contrary, the trial court specifically detei’mined “there was no malicie] or intent by the officer ti’ying to subvert Miranda by questioning without Miranda and then later going back to questioning with Miranda.” This finding is supported by the record. Indeed, it is only with the benefit of hindsight — a luxury not available to law enforcement offieei’s attempting to conduct a thoi’ough investigation, nor insti'uctive in our analysis — that the officer could have known Maciel would volunteer incriminating statements.
¶ 24 Finally, because no evidence exists here of the deliberate use of a two-step procedure as addressed in Seibert, the proper test is that set forth in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Zamora, 220 Ariz. at 70, ¶ 18, 202 P.3d at 535. Under Elstad, the txial court must deteimine: (1) whether the initial, preMiranda warning statements were coex'ced, and if so, (2) whether “the taint from such coercion has not dissipated through the passing of time or a change in cix’cumstances.” Elstad, 470 U.S. at 314, 105 S.Ct. 1285. If the initial statements were coex’ced, and the coercion did not dissipate through the passing of time or change in circumstances, all of the statements must be suppressed. Id. However, “a suspect who has once responded to unwarned yet uneoercive questioning is not thereby disabled from waiving his xdghts and confessing after he has been given the requisite Miranda warnings.” Id. at 318, 105 S.Ct. 1285. Therefox’e, if uncoerced statements are made pr e-Miranda, they are nonetheless admissible if voluntarily repeated post-Miranda. Id.
¶ 25 As noted above, reasonable evidence supports the trial court’s finding that Maciel’s statements at the eux’b were not coerced. See supra ¶¶ 18-20. After placing Maciel in custody and following additional investigation, the officer propex’ly provided Miranda warnings before questioning Maciel further. Maciel then voluntaxily chose to speak further with law enforcement and waived his Miranda rights. We find no error in the admission of Maciel’s subsequent statements.
¶ 26 Giving due defei’ence to the trial court’s factual findings, we find no abuse of discretion in the admission of Maeiel’s statements to law enforcement.
*207 II. Denial of Motion for Judgment of Acquittal
¶ 27 Maeiel next argues the trial court erred in denying his motion for judgment of acquittal, alleging no corpus delicti or physical evidence supports his admission that he removed the board and entered the building. He essentially asserts insufficient evidence was presented to support his conviction because there is no proof that anything was actually missing from the building or that he had an intent to commit a theft. We review the denial of a motion for judgment of acquittal based upon the corpus deliciti doctrine for an abuse of discretion. State v. Jones ex rel. Cnty. of Maricopa, 198 Ariz. 18, 23, ¶ 13, 6 P.3d 323, 328 (App.2000) (citing State v. Gerlaugh, 134 Ariz. 164, 170, 654 P.2d 800, 804 (1982), and Adolfson v. United States, 159 F.2d 883, 888 (9th Cir.1947)).
¶ 28 “A defendant may not be convicted of a crime based on an uncorroborated confession without independent proof of the corpus delicti, or the ‘body of the crime.’ ”[4] State v. Morgan, 204 Ariz. 166, 170, ¶ 15, 61 P.3d 460, 464 (App.2002) (citing State v. Gillies, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983), and Jones, 198 Ariz. at 2, ¶ 12, 6 P.3d at 307). However, under Arizona’s “corroborative approach,” before incriminating statements may be considered, the State’s proof need establish only a reasonable inference the crime was actually committed. Morris, 215 Ariz. at 333, ¶ 34, 160 P.3d at 212 (citing State v. Hall, 204 Ariz. 442, 453, ¶ 43, 65 P.3d 90, 101 (2003)). Such evidence may be circumstantial, id. (citing Hall, 204 Ariz. at 453, ¶ 43, 65 P.3d at 101), and “need not be of the quantum of proof beyond a reasonable doubt,” Jones, 198 Ariz. at 22, ¶ 12, 6 P.3d at 327 (citing Gerlaugh, 134 Ariz. at 170, 654 P.2d at 806).
¶ 29 Applying the corroborative approach, the trial court properly found the State had presented “sufficient corroboration of the admission[s] to get past the corpus delicti issue.” In support of its finding, the court referenced evidence that Maeiel was seen “right next to the window with the board taken off.” Additionally, there were shoe prints inside, providing evidence that entry was made into the building. Although the shoe prints did not match the shoes Maeiel was wearing when he was arrested, the court noted Maeiel had stated he went in the day before, when he could have been wearing different shoes. Additional circumstantial evidence also creates a reasonable inference a burglary was committed around the time Maeiel was observed near the un-boarded window, including: (1) testimony that the pastor had seen the board in place on the window when he was at the church three days prior, indicating the board was only recently removed; (2) physical evidence that the board had been nailed over the window and required active efforts to physically detach; (3) testimony that the building was used primarily for storage purposes and access through the window led to the basement storage area; and (4) evidence that the maintenance man who walked the property twice a week had not reported seeing anything “out of place” before the incident.
¶30 The State’s evidence, while circumstantial, provided a reasonable inference a burglary had occurred and corroborated Maciel’s voluntary statements. Therefore, we find no abuse of discretion in the trial court’s denial of Maciel’s motion for judgment of acquittal.
CONCLUSION
¶ 31 For the foregoing reasons, we affirm Maeiel’s conviction and sentence.
Judge PETER B. SWANN dissented.

. Absent material revisions from the relevant date, we cite a statute's current version.

. Contrary to the concerns expressed in the dissent, infra 1144, the officer did articulate a potential danger in allowing Maciel to remain seated by the uncovered window, noting: "If someone had emerged from the broken window and I had to contact them and if they were armed, we might have ... both been in danger in the close proximity to the window.”

. Even if the record could be reasonably read to conclude the officer "was also encouraging a third party [the pastor] to pursue a speculative *206 criminal complaint against the individual who was the focus of his care [Maciel],” infra ¶ 44, it would be irrelevant to a determination of whether an objectively reasonable defendant would have believed he was "in custody” at the time of questioning.

. The State urges us to hold the corpus delicti doctrine is no longer viable in Arizona. However, our supreme court still recognizes the applicability of the doctrine, see State v. Morris, 215 Ariz. 324, 333, ¶¶33-36, 160 P.3d 203, 212 (2007), and we have no authority to overrule its direction, State v. Foster, 199 Ariz. 39, 41 n. 1, ¶ 9, 13 P.3d 781, 783 n. 1 (App.2000) (citing Myers v. Reeb, 190 Ariz. 341, 342, 947 P.2d 915, 916 (App. 1997)).