IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JAMONTE LAWRENCE OLAGUE,
*Appellant*.

No. 2 CA-CR 2015-0056
Filed August 16, 2016

---

Appeal from the Superior Court in Pima County
No. CR20120104002
The Honorable Teresa Godoy, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Dean Brault, Pima County Legal Defender
By Scott A. Martin and Stephan McCaffery,
Assistant Legal Defenders, Tucson
*Counsel for Appellant*

**OPINION**

Chief Judge Eckerstrom authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

E C K E R S T R O M, Chief Judge:

**¶1**        Following a jury trial, appellant Jamonte Olague was convicted of first-degree murder and armed robbery.  On appeal, he challenges the denial of his motion to suppress his statements to law enforcement officers, his motion to dismiss, and his motions for a new trial.  We affirm for the reasons that follow.

**Factual and Procedural Background**

**¶2**        The issues presented on appeal mainly involve procedural facts that we develop as needed in the discussion sections below.  Viewed in the light most favorable to upholding the convictions, the evidence at trial established the following.  *State v. Tamplin*, 195 Ariz. 246, ¶ 2, 986 P.2d 914, 914 (App. 1999).  On December 30, 2011, Olague and several codefendants arranged to buy one pound of marijuana from the victim.  The next day they robbed and fatally shot him.

**¶3**        After Olague's arrest, a detective provided him the advisory required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and conducted an interview.  Before trial, Olague filed a motion to suppress the statements from the interview, which the trial court denied, finding that Olague knowingly, voluntarily, and intelligently had waived his constitutional rights and had properly been advised of those rights pursuant to *Miranda*.  In addition, the court denied Olague's motion to dismiss the indictment, rejecting his argument that he had been "selectively prosecuted" for murder because he and his codefendants were minorities, yet several "white" people who had assisted the victim in the attempted drug sale had not been similarly charged.

**¶4** After the jury found Olague guilty of the charges, he filed two motions for a new trial based on alleged juror misconduct. The trial court denied the motions and prohibited Olague from initiating further contact with jurors absent the court's prior approval. The court then sentenced Olague to concurrent prison terms, the longer of which is life without the possibility of release for twenty-five years. We have jurisdiction over his delayed appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1) and (2).

## Motion to Suppress

**¶5** Olague first contends the trial court erred in denying his motion to suppress his statements to detectives because he did not validly waive his *Miranda* rights. A waiver of such rights must be voluntary, meaning the product of "free and deliberate choice rather than intimidation, coercion, or deception." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010), *quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986); *accord In re Andre M.*, 207 Ariz. 482, ¶ 7, 88 P.3d 552, 554 (2004).[1] Olague asserts his statements were inadmissible because he did not answer the detectives' questions or spontaneously speak to the officers; instead, he merely responded to a law enforcement command to tell his side of the story, which he characterizes as an "inherently coercive order."

**¶6** We review a trial court's ruling on a motion to suppress for an abuse of discretion, *State v. Villalobos*, 225 Ariz. 74, ¶ 10, 235 P.3d 227, 231 (2010), and defer to the court's factual determinations. *State v. Maciel*, 238 Ariz. 200, ¶ 10, 358 P.3d 621, 624 (App. 2015). "In assessing a waiver, courts examine the totality of the surrounding circumstances, 'including the defendant's background, experience, and conduct.' The defendant's prior interactions with law enforcement are relevant to this inquiry." *State v. Naranjo*, 234 Ariz. 233, ¶ 7, 321 P.3d 398, 403 (2014) (citation omitted), *quoting State v.*

---

[1] Voluntariness and *Miranda* typically present distinct legal issues. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 172, 800 P.2d 1260, 1280 (1990). Olague expressly states on appeal that he is not raising a voluntariness claim.

*Montes*, 136 Ariz. 491, 495, 667 P.2d 191, 195 (1983).  Our appellate review is limited to the evidence presented at the suppression hearing, *State v. Newell*, 212 Ariz. 389, ¶ 22, 132 P.3d 833, 840 (2006), which we view in the light most favorable to upholding the trial court's ruling.  *Naranjo*, 234 Ariz. 233, ¶ 4, 321 P.3d at 403.

¶7      Although Olague bases his argument on the precise language the detective used to secure the waiver here, our record on appeal does not include the exhibits admitted at the suppression hearing.  An appellant has the burden of ensuring the appellate record contains the necessary items for the arguments presented.  *State v. Jessen*, 130 Ariz. 1, 8, 633 P.2d 410, 417 (1981).  Despite the fact that the state's answering brief noted this deficiency, Olague has taken no steps to cure it.  Instead, he asserted in his reply brief that a recording of the interview was properly admitted at the suppression hearing and should have been included automatically in the record on appeal pursuant to Rule 31.8(a)(1), Ariz. R. Crim. P.  He therefore urged this court to supplement the record "with no negative ramifications for [him]."  It is an appellant's duty to supplement an incomplete record, however, not this court's.  *State v. Kerr*, 142 Ariz. 426, 430, 690 P.2d 145, 149 (App. 1984).

¶8      At the suppression hearing, a detective testified that he read a verbatim *Miranda* advisory to Olague at the beginning of the custodial interview.  That advisory informed Olague of his right to remain silent and to have an attorney present before and during any questioning.  *See Miranda*, 384 U.S. at 444, 469-70.  After Olague stated he understood his rights, the detective sought a waiver by asking if he was "cool with" their discussion continuing.  The detective testified that he had brief conversations with Olague in the past and that he had phrased his question as he did both to tailor it to Olague's level of understanding and to create a relaxed atmosphere.  Similarly, the detective removed Olague's handcuffs to create a less stressful environment.  Thus, on the record properly before us, we find no abuse of discretion in the trial court's ruling that Olague understood and voluntarily waived the *Miranda* protections.  *Cf. Thompkins*, 560 U.S. at 375, 385 (reasoning that defendant who understood rights chose not to invoke or rely on rights when he did speak); *State v. Zimmerman*, 166 Ariz. 325, 330,

802 P.2d 1024, 1029 (App. 1990) (finding statements admissible when detective told defendant he "wanted to . . . get his information, get the story over with," reminded defendant of *Miranda* advisory, then asked if defendant wanted to talk).

¶9            As the parties point out, a recording of the interview was admitted at trial, and a transcript was attached to one of the state's pretrial motions.  Yet even if we considered these additional items, we still would find no basis to disturb the trial court's determination that Olague had not been coerced.  In context, the detective's preliminary questions—"All right?" and "You cool with that?"—implied that any further discussion on the topic of "what went down" would be voluntary and subject to termination if Olague invoked the *Miranda* rights the detective had explained only moments earlier.  The full record shows an absence of law enforcement overreach or compulsion.  *See State v. Carrillo*, 156 Ariz. 125, 135, 750 P.2d 883, 893 (1988) (stating voluntariness of waiver depends on objective evaluation of police conduct).

**Motion to Dismiss**

¶10            Before trial, Olague joined a motion to dismiss his murder charge due to selective prosecution based on impermissible racial discrimination.  The trial court denied the motion because it rested on the faulty legal premise that a person could be charged with felony murder for the sale of marijuana below the two-pound threshold amount set forth in A.R.S. § 13-3401(36)(h).

¶11            Our felony-murder statute, A.R.S. § 13-1105(A)(2), enumerates the predicate offenses that will support a first-degree murder charge.  The list includes "marijuana offenses under § 13-3405, subsection A, paragraph 4, dangerous drug offenses under § 13-3407, subsection A, paragraphs 4 and 7, [and] narcotics offenses under § 13-3408, subsection A, paragraph 7 *that equal or exceed the statutory threshold amount for each offense or combination of offenses*."  § 13-1105(A)(2) (emphasis added).  On appeal, Olague continues to argue that this threshold-amount clause in the felony-murder statute applies only to specified narcotics offenses, the clause's last antecedent.  He maintains that threshold amounts do not apply to marijuana offenses, dangerous drug offenses, or the

various other disparate offenses enumerated in § 13-1105(A)(2), such as child molestation and terrorism.

¶12　　　　We review questions of statutory interpretation de novo, striving to give effect to the intent of the enacting legislature. *State v. Jones*, 235 Ariz. 501, ¶ 6, 334 P.3d 191, 192 (2014). We look first to the statute's language to determine its meaning. *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). When that language is susceptible to more than one reasonable interpretation, as is the relevant clause of § 13-1105(A)(2), we employ secondary methods of construction to determine its meaning. *See State ex rel. Polk v. Campbell*, 239 Ariz. 405, ¶ 5, 372 P.3d 929, 930 (2016).

¶13　　　　The history of § 13-1105(A)(2) resolves the question of legislative intent. *See Campbell*, 239 Ariz. 405, ¶ 5, 372 P.3d at 930 (recognizing context and historical background of statute as tools for interpretation). In 1987, the only drug crimes that served as predicate felonies for first-degree murder were certain "narcotics offenses," with no minimum amount of the drug specified by law. 1987 Ariz. Sess. Laws, ch. 307, § 7. In 1993, the legislature expanded § 13-1105(A)(2) to include offenses involving the transportation or sale of marijuana or dangerous drugs. 1993 Ariz. Sess. Laws, ch. 255, § 20. The legislature also introduced "statutory threshold amount[s]" for various drug offenses, 1993 Ariz. Sess. Laws, ch. 255, §§ 38-43, broadening the application of a concept that previously had applied only to marijuana offenses. *See* S. Revised Fact Sheet for S.B. 1049, 41st Leg., 1st Reg. Sess., at 3 (Ariz. Feb. 5, 1993) (hereinafter S. Fact Sheet); H.R. B. Summary for SB 1049, 41st Leg., 1st Reg. Sess., at 3 (Ariz. Mar. 23, 1993) (hereinafter H.R. B. Summary).

¶14　　　　The legislative history of the 1993 crime bill shows that both chambers intended the application of the felony-murder statute to depend on the quantity of the drug involved. For marijuana, the amount originally was set at eight pounds, consistent with the former version of A.R.S. § 13-3405(C). *See* S. Fact Sheet, at 2-3; H.R. B. Summary, at 3; *see also* 1990 Ariz. Sess. Laws, ch. 366, § 7. The bill that ultimately emerged from the conference committee reduced this amount and removed the language specifying different quantities for different types of drugs. S. & H. Free Conf. Comm. Amends. to

H. Engrossed SB 1049, 41st Leg., 1st Reg. Sess., at 8 (Ariz. Apr. 16, 1993). As amended, the bill instead uniformly applied the new language concerning "statutory threshold amount[s]." *Id.* In making these changes, the conference committee both moved the threshold-amount clause to its present location and added the language specifying that it applied "for each offense or combination of offenses." *Id.* The full clause therefore reflects that the legislature understood and intended "each" different type of drug crime listed in the series—namely, marijuana, dangerous drug, and narcotics offenses—to require a statutory threshold amount. § 13-1105(A)(2).

¶15 In sum, first-degree murder based on felony murder under § 13-1105(A)(2) requires a statutory threshold amount for offenses under §§ 13-3405(A)(4) and 13-3407(A)(7), not just those under § 13-3408(A)(7).[2] Because we agree with the trial court's construction of the felony-murder statute, we find no error in the court's denial of the motion to dismiss.

**Motions for New Trial**

¶16 Olague sought a new trial based on at least two types of alleged juror misconduct. His first motion claimed that Juror 8 had "pledge[d]" her vote within the meaning of Rule 24.1(c)(3)(iv), Ariz. R. Crim. P., because she had been "bullied by physical gestures" of one particularly "intense" juror and had "feared retaliation" from the others, which made her change her vote to guilty simply to avoid a confrontation with them. Olague's supplemental motion alleged that the same intense juror had committed misconduct by insisting during deliberations that Olague would receive probation if convicted. Olague contended, specifically, that this juror's comments regarding punishment had injected inadmissible extrinsic evidence into deliberations, in violation of Rule 24.1(c)(3)(i). Both the motions included supporting affidavits from Juror 8; the supplemental motion also included an affidavit from Juror 10.

---

[2] Our analysis does not address the manufacture of a dangerous drug under § 13-3407(A)(4), which was subsequently added to the felony-murder statute. 2000 Ariz. Sess. Laws, ch. 50, § 2.

¶17       The trial court denied the motions on several alternative grounds.  We review the court's ruling for an abuse of discretion. *See State v. Welch*, 236 Ariz. 308, ¶ 17, 340 P.3d 387, 393 (App. 2014). We will affirm that ruling so long as the court reached the legally correct result.  *See State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).

¶18       Turning first to the allegation of bullying and retaliation, we note that "[p]ressure from other jurors, generally, will not serve as the basis for a mistrial."  *State v. Hutton*, 143 Ariz. 386, 391, 694 P.2d 216, 221 (1985).  A juror's testimony or affidavit that she felt pressured into her verdict does not establish misconduct. *See State v. Hall*, 129 Ariz. 589, 595, 633 P.2d 398, 404 (1981) (hereinafter *Hagen*), *overruled on other grounds by State v. Bass*, 198 Ariz. 571, ¶¶ 12-13, 12 P.3d 796, 801 (2000); *State v. Childs*, 113 Ariz. 318, 323-24, 553 P.2d 1192, 1197-98 (1976); *State v. Cipriano*, 24 Ariz. App. 478, 479-80, 539 P.2d 952, 953-54 (App. 1975); *see also State v. Sands*, 145 Ariz. 269, 275, 700 P.2d 1369, 1375 (App. 1985) ("vague allegations of 'dictatorial means' tainting the deliberations" held not to be misconduct).  Indeed, Rule 24.1(d) forbids a court from receiving evidence of the subjective motives or mental processes that led a juror to her verdict.  *State v. Callahan*, 119 Ariz. 217, 219, 580 P.2d 355, 357 (App. 1978).

¶19       With respect to the conduct of jurors during deliberations, a distinction exists between a juror's "blustering arrogance," on the one hand, and threats of violence that would cause a reasonable person to fear for her safety, on the other. *Anderson v. Miller*, 346 F.3d 315, 329 (2d Cir. 2003), *quoting United States v. Grieco*, 261 F.2d 414, 415 (2d Cir. 1958) (per curiam). "[A]rticulate jurors may intimidate the inarticulate, [and] the aggressive may unduly influence the docile," but such dynamics are an accepted part of the deliberative process.  *Jacobson v. Henderson*, 765 F.2d 12, 15 (2d Cir. 1985) (per curiam), *quoting People v. De Lucia*, 229 N.E.2d 211, 213 (N.Y. 1967) (second alteration in *Jacobson*).  A court will not disturb a verdict based on "'weakly authenticated juror statement[s] containing vague allegations of "harassment" and "verbal abuse."'"  *Anderson*, 346 F.3d at 330, *quoting Mercado v. Portuondo*, 2000 WL 1663437, at *10 (S.D.N.Y. Nov. 3, 2000)

(alteration in *Anderson*). Polling in open court normally provides the opportunity for jurors "to communicate directly with the court if any of them felt unfairly coerced, harassed, intimidated, or felt themselves to be in physical danger." *Jacobson*, 765 F.2d at 15; *accord State v. Kiper*, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App. 1994).

**¶20**　　　　Here, as the trial court noted, the juror who alleged she had been coerced voiced no such concern when she was polled in open court about her verdict. Furthermore, all three affidavits from the jurors contained only vague allegations of bullying and fears of retaliation. They identified no specific threats or other information suggesting Juror 8 had "pledg[ed]" her vote of guilt. Ariz. R. Crim. P. 24.1(c)(3)(iv). Although Juror 8's supplemental affidavit employed this specific language, in substance it established, at most, that she had "returned a verdict based solely on the pressure of other jurors," as she had stated in her initial affidavit. Because the affidavits essentially concerned Juror 8's mental processes and subjective feelings during the deliberations, the trial court properly ruled this evidence inadmissible under Rule 24.1(d). We agree with the court's conclusion that Olague failed to establish juror misconduct based on either pledging a vote or threats and intimidation.[3]

**¶21**　　　　We similarly agree that the juror's comments regarding sentencing provide no basis for a new trial. A defendant seeking a new trial for claimed misconduct under Rule 24.1(c)(3)(i) bears the initial burden of proving that jurors received and considered extrinsic evidence. *State v. Hall*, 204 Ariz. 442, ¶ 16, 65 P.3d 90, 95 (2003). The rule refers to outside information a juror collects after being empaneled. *State v. McLoughlin*, 133 Ariz. 458, 460-61 & 461 n.2, 652 P.2d 531, 533-34 & 534 n.2 (1982). Extrinsic evidence does not include a juror's pretrial beliefs or experiences. *See, e.g., State v. Aguilar*, 169 Ariz. 180, 181-82, 818 P.2d 165, 166-67 (App. 1991) (physician sharing knowledge of alcohol and cocaine intoxication); *State v. Leonard*, 151 Ariz. 1, 5-6, 725 P.2d 493, 497-98 (App. 1986)

---

[3]We need not decide the disputed question of whether a verdict ever may be challenged when a juror has affirmed it in a proper poll.

(former railroad worker stating defendant would lose employment with railroad if convicted).

**¶22** Nothing here suggests the jury received extrinsic evidence related to punishment. According to the affidavits, the juror in question stated that Olague would "probably" get probation or a "minimal" sentence "since [another witness] got immunity" and Olague "did not pull the trigger." If these comments represent anything more than mere speculation, they tend to suggest that the juror was attempting to draw an inference about likely punishments based on the trial testimony of the witness who had received immunity.[4] In short, Olague failed to sustain his burden concerning extrinsic evidence, *see Hall*, 204 Ariz. 442, ¶ 16, 65 P.3d at 95, and the trial court properly denied the motions for new trial under Rule 24.1(c)(3)(i). It did not abuse its discretion.

**¶23** As he did below, Olague again challenges the trial court's restriction of his contact with jurors. The court prohibited Olague from contacting jurors without a prior showing of "good cause" and approval from the court. Albeit with little reasoning or analysis, we specifically approved this practice in *State v. Paxton*, 145 Ariz. 396, 397, 701 P.2d 1204, 1205 (App. 1985). Stare decisis therefore requires special justification to depart from existing precedent. *Turley v. Ethington*, 213 Ariz. 640, ¶ 26, 146 P.3d 1282, 1289 (App. 2006). Yet neither party has addressed *Paxton* on appeal. Moreover, Olague has not developed a meaningful argument that the trial court's order prevented him from discovering any jury misconduct in this case.

**¶24** Using his own investigative techniques, Olague obtained the contact information for eight jurors. He then was able to solicit voluntary interviews with four of them. He obtained

---

[4]Although these comments ran afoul of the trial court's clear instructions not to consider possible punishments when deciding the case, a violation of jury instructions is not included in the list of juror misconduct under Rule 24.1(c)(3) and consequently cannot support a motion for new trial. *See State v. Chaney*, 141 Ariz. 295, 311, 686 P.2d 1265, 1281 (1984); *Hagen*, 129 Ariz. at 595, 633 P.2d at 404.

affidavits, as noted, from two jurors.  The time for filing a new trial motion already had expired when the trial court made its order limiting his access to the jurors.  Olague has not explained which jurors, if any, the court's order prevented him from contacting or attempting to contact.  We therefore find no special justification, on the particular facts before us, to disturb our holding in *Paxton*.

## Disposition

¶25        For the foregoing reasons, the convictions and sentences are affirmed.