NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LINDA MARIA FRIAS, *Appellant.*

No. 1 CA-CR 17-0333
FILED 8-14-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-126921-001 DT
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Stephen M. Johnson, P.C., Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**W I N T H R O P**, Judge:

¶1        Linda Maria Frias ("Frias") appeals her convictions and sentences for aggravated assault, disorderly conduct, and unlawful discharge of a firearm.  Frias argues the trial court erred in denying her motion for new trial based on alleged juror misconduct.  For the following reasons, we affirm Frias' convictions and sentences.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        On June 11, 2015, two men attempted to repossess Frias' fiancé's vehicle from her home, where she lived with her fiancé and children.  Frias' fiancé confronted the men and at some point, Frias approached the men and fired her gun.  Frias was arrested and indicted on multiple counts: count 1, aggravated assault, a class 3 dangerous felony; count 2, disorderly conduct, a class 6 dangerous felony; and count 3, unlawful discharge of a firearm, a class 6 dangerous felony.

¶3        The case proceeded to a multi-day trial at which one of the key issues was whether Frias intentionally or unintentionally discharged her gun.  At trial, Frias testified that when the men were talking to her fiancé, she became scared, put her finger on the gun's trigger, and squeezed, unintentionally firing the gun into the ground.  The State, however, argued that Frias intentionally shot the gun.  In support of this argument, the State's witness testified that Frias would have needed to pull the trigger of the gun entirely back (about 1½ inches) before the gun would fire, and that Frias would have had to use force sufficient to move 11¼ pounds to pull the trigger (the "trigger weight").[2]  The defense's witness' testimony was

---

[1]        We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the trial court's ruling.  *State v. Guerra*, 161 Ariz. 289, 293 (1989).

[2]        The trigger weight or "pull" is the amount of force required on the trigger to both cock and release the hammer and fire the gun.

consistent with the State's witness' testimony. The defense witness estimated the gun's trigger weight to be between nine to fourteen pounds.

¶4            The defense witness testified about the differences between an intentional (deliberate and conscious movement), accidental (manufacturing defect), and involuntary (unconscious movement) discharge of a gun. The defense witness ultimately concluded, after assessing the gun, that the gun did not accidentally discharge because it did not have any manufacturing defects. Although the defense witness was unable to determine whether Frias intentionally discharged the gun, he testified that the gun's discharge was likely unintentional because of the high-stress situation. The State presented a rebuttal witness who testified that there was no evidence to support an unintentional discharge and that, in general, studies did not support the defense's theory that stress can lead to an unintentional discharge.

¶5            In closing, the State argued that regardless of where Frias pointed the gun, she intended to put the alleged victims in reasonable apprehension of bodily harm, and thus, committed aggravated assault. In response, defense counsel reiterated that Frias unintentionally fired the gun. After deliberations, the jury found Frias guilty on all charges.

¶6            The next day, a juror ("Juror 5") informed the court that one of the other jurors ("Juror 1") "weighed" or tested the trigger weight on her gun at home during the trial and then commented on the results to the jury during deliberations. Juror 5 also reported that Juror 1 told the jury during deliberations that two of Frias' charges were misdemeanors. Frias moved for a new trial based on alleged juror misconduct, the State opposed Frias' motion, and the court set an evidentiary hearing to determine the extent of the alleged jury misconduct.

¶7            The court individually questioned each juror. Juror 5 testified that, at the beginning of jury deliberations, Juror 1 told her that she weighed her gun, which was the same caliber of gun at issue in the case, and that the weight was different from the evidence presented. Juror 5 stated that Juror 1 did not identify which piece of evidence or which witness she disagreed with. Juror 5 also testified that the jury did not discuss Juror 1's comment because the Jury Foreperson "immediately" told Juror 1 to stop talking, and the matter was not brought up again at any time during the jury's deliberations.

¶8            Although each juror's testimony about the precise phrasing and timing of Juror 1's comment differed, all jurors testified that Juror 1

commented about the weight or trigger pull of her gun during jury deliberations. The jurors, however, testified that they did not discuss Juror 1's comment as a part of the jury deliberations, or in relation to Frias' charges or any evidence presented at trial. Moreover, some of the jurors testified that Juror 1 commented that two of Frias' charges were misdemeanors. The jurors who remembered this comment testified that at no point did any of the jurors attempt to determine which charges, if any, were misdemeanors, nor did they attempt to define the difference between a misdemeanor and a felony.

¶9        After hearing the jurors' testimony and oral argument from the parties, the court found that only Juror 1 considered extrinsic evidence during deliberations. Ultimately, however, the court found that Juror 1's comments did not taint the jury's verdicts. Accordingly, the court denied Frias' motion for new trial, and set the matter for sentencing.

¶10        The court sentenced Frias to the minimum sentence for each count: 5 years in prison for count 1, 1.5 years' imprisonment for count 2, and 1.5 years' imprisonment for count 3. The court ordered each term to run concurrently and provided Frias with 54 days of presentence incarceration credit. Frias timely appealed and we have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and -4033(A) (2018).

## ANALYSIS

¶11        On appeal, Frias argues that the trial court abused its discretion when it denied her motion for new trial. We will not reverse the trial court's decision to deny a new trial based on alleged juror misconduct absent an abuse of discretion. *State v. Hall*, 204 Ariz. 442, 447, ¶ 16 (2003). A defendant may be entitled to a new trial if "[a] juror or jurors have been guilty of misconduct by . . . [r]eceiving evidence not properly admitted during the trial or the aggravation or penalty hearing." Ariz. R. Crim. P. 24.1(c)(3)(i).[3] In the context of Rule 24.1, extrinsic evidence is "outside information a juror collects after being empaneled." *State v. Olague*, 240 Ariz. 475, 481, ¶ 21 (App. 2016). "Once the defendant shows that the jury has received and considered extrinsic evidence, prejudice must be

---

[3]        The Arizona Rules of Criminal Procedure were revised in 2017, effective January 1, 2018. *See* Ariz. Sup. Ct. Order No. R-17-0002 (Aug. 31, 2017). We cite the version of Rule 24.1(c)(3) that was in effect at the time of Frias' trial.

presumed and a new trial granted unless the prosecutor proves beyond a reasonable doubt that the extrinsic evidence did not taint the verdict." *Hall*, 204 Ariz. at 447, ¶ 16.

**¶12**        Here, it is undisputed that at least some of the jurors received extrinsic evidence, Juror 1's statement, during deliberations. The trial court found that only Juror 1 considered the extrinsic evidence. Even if the jury both received and considered extrinsic evidence, the evidence must taint the jury's verdict for Frias to be entitled to a new trial. To determine whether extrinsic evidence affected a jury's verdict, we consider:

> 1.      whether the prejudicial statement was ambiguously phrased;
>
> 2.      whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial;
>
> 3.      whether a curative instruction was given or some other step taken to ameliorate the prejudice;
>
> 4.      the trial context; and
>
> 5.      whether the statement was insufficiently prejudicial given the issues and evidence in the case.

*Id.* at 448, ¶ 19. The fourth factor, the trial context, includes:

> whether the material was actually received, and if so, how; the length of time it was available to the jury; the extent to which jurors discussed and considered it; whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

*Id.* (quoting *United States v. Keating*, 147 F.3d 895, 902-03 (9th Cir. 1998)).

**¶13**        First, Juror 1's statement was ambiguous at best. At the evidentiary hearing, each juror testified that Juror 1 made a comment about her own gun. Each juror's recollection about Juror 1's specific comment differed; some jurors recalled Juror 1 talking about dry-firing her gun, others recalled her commenting about her gun's weight or its trigger pull. None of the jurors testified, however, that the comment was made while

discussing any specific testimony or evidence, or during discussion about whether the shooting was intentional or unintentional. Next, as it relates to the second and third *Hall* factors, Juror 1's statement would not have been admissible at trial, and no curative instruction was given because the court did not know about Juror 1's comments until after the verdict was returned.

¶14        The "trial context" of Juror 1's statement is instructive. All the jurors agreed that Juror 1 made these comments during deliberations before the jurors reached a verdict. Most jurors testified that Juror 1 made these comments at the beginning of deliberations, but that the Jury Foreperson prevented Juror 1 or any of the other jurors from discussing Juror 1's comments. The jurors testified that, although they remembered Juror 1 commenting about the weight of her gun, weighing her gun, or dry-firing the trigger, they did not discuss the differences in weight, nor did Juror 1 specify which testimony she thought conflicted with her results or which charges the gun weight or trigger-pull weight would affect.

¶15        Finally, whether the evidence was "insufficiently prejudicial given the issues and evidence in the case," requires us to consider the extrinsic evidence in the context of the case. Simply stated, Juror 1's comments would not affect the outcome of this case or implicate Frias' guilt. The statement did not support or cut against either the State's position or Frias' position. Juror 1 did not inform the other jurors whether her trigger pull or gun weight was different because her gun weighed less or the trigger pull was less (perhaps making it more likely that there was an unintentional discharge) or whether it weighed more or the trigger pull was more (perhaps making it more likely there was an intentional discharge). Likewise, any comment Juror 1 made about potential misdemeanors was unlikely to influence the jury's verdict. The record is unclear how many jurors heard Juror 1 refer to a misdemeanor; however, those that did remember testified that the reference was brief, the jury did not define what a misdemeanor was or consider whether certain charges were misdemeanors when deliberating.

¶16        Whether extrinsic information contributed to the verdict is a decision within the sound discretion of the trial court. *Hall*, 204 Ariz. at 449, ¶ 23. The judge holding the evidentiary hearing is in the best position to assess the effect of extrinsic evidence. *Id.* The trial court employed appropriate measures to determine whether Frias' trial was tainted in any way by the extrinsic information. The court properly heard testimony from each juror regarding whether the juror had heard or considered Juror 1's comments. In addition to its own close questioning of the jurors, the court permitted attorneys for both the State and defense to ask questions of each

juror. The trial court did not abuse its discretion by finding beyond a reasonable doubt that Juror 1's comments did not contribute to, or improperly influence, the jury's verdicts.

## CONCLUSION

¶17 For the foregoing reasons, Frias' convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA