NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JACOB J. NARANJO, *Appellant*.

Nos.1 CA-CR 18-0561
1 CA-CR 18-0891
(Consolidated)
FILED: 10-8-19

Appeal from the Superior Court in Maricopa County
No. CR 2017-002886-001
The Honorable Julie Ann Mata, Commissioner

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

Jacob J. Naranjo, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L,** Judge:

¶1        Jacob Naranjo appeals from his convictions and sentences for kidnapping and assault, as well as a corresponding restitution order. After searching the record on appeal and finding no arguable question of law, Naranjo's counsel filed briefs in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), asking this court to search the record for reversible error. This court granted counsel's motion to allow Naranjo to file a pro per supplemental brief, and Naranjo did so. Having reviewed the entire record and considered the supplemental brief, we find no reversible error and affirm.

**BACKGROUND[1]**

¶2        As she walked alone to school before dawn, the 17-year-old victim vigilantly surveyed her surroundings. At one point, she cautiously glanced over her shoulder and noticed a bicyclist approaching her from behind. She moved over to allow him to pass by her on the sidewalk, but continued walking. To her surprise, the bicyclist dismounted his bike, grabbed her from behind, placed her in a choke-hold, pressed a hard, sharp object against her temple, and ordered her to "get on the ground."

¶3        Frightened, the victim screamed and struggled to free herself from the bicyclist's grasp. Despite his attempts to push her to the ground, the victim maneuvered out of the choke-hold and began running. Once she placed some distance between herself and her attacker, the victim called 9-1-1 on her cellular phone. Meanwhile, the bicyclist, watching her flee, yelled, "[f]ine, go and tell," which prompted the victim to look back and see that her attacker, who was standing under a lamp post, was a bald, Hispanic man in his mid-30s wearing a long-sleeved orange shirt.

---

[1]    We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against Naranjo. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶4          Shortly after the victim provided this description to the emergency operator, Officer John Gardner received a dispatch call regarding the reported kidnapping. Already in the vicinity, he began canvassing the area for the bicyclist. When he spotted a man riding a bicycle, the officer sped up to close the gap between them and observed that the bicyclist matched the suspect's description. Immediately, Officer Gardner activated his vehicle's emergency lights and the bicyclist, Naranjo, stopped.

¶5          At the time he was detained, Naranjo had a lunchbox in his possession. When a police officer searched the lunchbox, he found it contained a pair of gardening shears with two long, dark strands of hair wedged within the blades, which appeared consistent with the victim's hair.

¶6          Although initially reluctant, the victim participated in a one-on-one identification shortly after the attack. Upon seeing Naranjo, the victim immediately identified him as her attacker.

¶7          The State charged Naranjo with one count of kidnapping and one count of aggravated assault (use of gardening shears). The State also alleged aggravating circumstances, including the use of a dangerous instrument (gardening shears).

¶8          At trial, the victim testified that her attacker pressed a weapon against her temple. On cross-examination, she acknowledged, however, that she had told police officers it was possible her attacker had simply placed his knuckles to her head and that the "object" she felt was about the size of a fist. The forensic scientist who performed tests on the hairs retrieved from the gardening shears testified that she was unable to obtain a DNA profile from either hair.

¶9          After trial, a jury found Naranjo guilty of kidnapping and the lesser-included offense of assault. Although the jury also found three aggravating factors (kidnapping was a dangerous offense, physical and emotional harm to the victim, and the victim was a minor at the time of the offense), Naranjo was sentenced to a slightly mitigated term of nine years' imprisonment for the count of kidnapping and a concurrent term of 30 days' imprisonment for the count of assault, with 54 days of presentence incarceration credit.

¶10          Subsequent to sentencing, the State requested restitution on behalf of the victim. After an evidentiary hearing, the superior court ordered Naranjo to pay restitution in the amount of $473.90 for the victim's

mileage to and from court, medical expenses, and counseling services. Naranjo timely appealed from both the sentences imposed and the restitution order.

## DISCUSSION

¶11        In his pro per supplemental brief, Naranjo challenges the superior court's instructions to the jury, in both the guilt and aggravation phases, defining "dangerous instrument." He contends the instructions were unconstitutionally overbroad and ambiguous.

¶12        During both phases of trial, the superior court provided the jurors the following instruction defining the phrase "dangerous instrument":

> "Dangerous instrument" means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.

Although the jury raised no question regarding this instruction during the guilt phase, a juror submitted the following question during the aggravation phase:

> "Can an arm, fist or any body part be considered a dangerous instrument?"

¶13        With the agreement of counsel, the superior court referred the jurors back to their instructions. After the jury returned its aggravation verdicts and the court released the jurors from the admonition, three jurors spoke with the attorneys. During their discussion, a juror reported that the jury had disregarded the shears during the guilt phase. Given this disclosure, defense counsel asked how the jurors had found that the kidnapping constituted a dangerous offense. While one juror reported that he found the gardening shears were a dangerous instrument, the other two jurors stated that they found Naranjo's arms and fists qualified as a dangerous instrument.

¶14        Based on the three jurors' post-trial statements, the prosecutor moved for a new aggravation trial on the allegation that the kidnapping was a dangerous offense. Finding that both the jury instruction defining "dangerous instrument" correctly stated the law and the trial evidence supported a finding that Naranjo used a dangerous instrument, the court denied the motion for a new aggravation trial.

¶15       We review the denial of a motion for new trial for an abuse of discretion. *State v. West*, 238 Ariz. 482, 488, ¶ 12 (App. 2015). As relevant here, the court may grant a new phase of trial if it erred in instructing the jury on a matter of law or the verdict is contrary to the weight of the evidence. *See* Ariz. R. Crim. P. 24.1(c).

¶16       To assess whether instructions properly reflect the law, we review them in their entirety and will not reverse a jury verdict based on an erroneous instruction unless the instructions could reasonably mislead a jury. *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75 (2000); *State v. Gallegos*, 178 Ariz. 1, 10 (1994). If a jury instruction is substantially free from error, the defendant generally suffers no prejudice from its wording. *Gallegos*, 178 Ariz. at 10.

¶17       Here, the superior court's instruction defining "dangerous instrument" precisely tracked the statutory definition. A.R.S. § 13-105(12) ("'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."). Therefore, the court did not err by providing the given instruction.

¶18       Although a superior court, in consultation with counsel, may provide a clarifying instruction in response to a jury's question, the "decision to further instruct a jury on a matter . . . is within the [superior] court's discretion." *State v. Ramirez*, 178 Ariz. 116, 126 (1994). "Thus, [w]hen a jury asks a judge about a matter on which it has received adequate instruction, the judge may in his or her discretion refuse to answer or may refer the jury to the earlier instruction." *Id.* (internal quotations omitted). In this case, the superior court did not abuse its discretion when, in response to the jury's question, it referred the jurors back to the final written instructions.

¶19       Moreover, as found by the superior court, the jury's verdict was not contrary to the weight of the evidence. At trial, the victim testified that Naranjo pressed a "sharp," "pointy," "hard" object that she recognized as a "weapon" to her head. Notwithstanding her prior statement to police that the "object" may possibly have been Naranjo's knuckles, the victim's testimony, coupled with the two hairs retrieved from the shears, provided sufficient evidence to support the jury's verdict.

¶20       Although Naranjo argues that at least two members of the jury inaccurately interpreted the definition of dangerous instrument, it is well-settled that a jury verdict cannot be impeached by a juror who agreed

in open court to the verdict, and this court will not examine the subjective motives or mental processes of a jury. *State v. Olague*, 240 Ariz. 475, 480, ¶ 18 (App. 2016); *State v. Kiper*, 181 Ariz. 62, 68 (App. 1994). While a narrow exception to this general rule permits a court to consider a juror's testimony or affidavit when the verdict is challenged based on certain juror misconduct, none of the enumerated exceptions apply to this case. *See* Ariz. R. Crim. P. 24.1(c)(3).

¶21        In addition to reviewing the arguments presented in Naranjo's supplemental brief, we have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300. Naranjo received a fair trial. He was represented by counsel at all stages of the proceedings and was present at all critical stages.

¶22        The evidence presented at trial was substantial and supports the verdicts. The jury was comprised of 12 members and the court properly instructed the jury on the elements of the charges — Naranjo's presumption of innocence, the State's burden of proof, and the necessity of a unanimous verdict. The superior court received and considered a presentence report, Naranjo was given an opportunity to speak at sentencing, and his sentences were within the range of acceptable sentences for his offenses.

¶23        Furthermore, the record contains substantial evidence supporting the superior court's restitution order. A victim may recover economic damage losses from a defendant's acts, including out-of-pocket expenses "that would not have been incurred but for the offense." A.R.S. § 13-105(16). Here, the court conducted a restitution hearing, considered evidence that the victim incurred travel, medical, and counseling expenses related to Naranjo's offenses, and determined the amount of restitution to make the victim whole. *See State v. Ellis*, 172 Ariz. 549, 550 (App. 1992).

## CONCLUSION

¶24        We affirm Naranjo's convictions and sentences, as well as the restitution order. Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are

fulfilled once he informs Naranjo of the outcome of this appeal and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Naranjo has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:          RB