# IN THE COURT OF APPEALS OF IOWA

No. 19-1151
Filed February 19, 2020

**IN THE INTEREST OF A.R.,**
**Minor Child,**

**T.E., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Jesse A. Macro, Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney for minor child.

Karl Wolle of Juvenile Public Defender's Office, Des Moines, guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

A mother appeals the termination of her parental rights. Upon our de novo review of the record, *see In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we affirm.

### I. *Background Facts and Proceedings*.

T.E. is the mother of A.R., born in 2006. Before the child's birth, the mother's parental rights to her three oldest biological children were terminated. In the 2002 termination-of-parental-rights order, the juvenile court noted the mother had a long history of substance abuse. At the time of that termination-of-parental-rights hearing, the mother was incarcerated in jail on three pending criminal charges, including conspiracy to deliver a controlled substance. The mother's parental rights were terminated. She pled guilty to drug-related offenses, was incarcerated from 2002 to 2005, and successfully completed parole in 2006.

The mother remained sober for several years, but by 2012, the mother was again using methamphetamine. In 2012, the family was referred to the Iowa Department of Human Services (DHS) after an incident involving the mother occurred at a local motel, where the mother and the child, then age six, were living. Law enforcement officials responded to a reported burglary at the motel and learned two men staying with the mother had broken into the motel's pop machine. After officers arrived, the mother left the motel with one of the men, leaving the child behind in the room with another man. Drug paraphernalia and two loaded syringes of methamphetamine were found in the room.

Before the DHS "had a chance to assess the situation," the mother left town with the child to stay with relatives, avoiding confrontation with the DHS. Two weeks after the motel incident, the child was removed from the mother's care with

assistance from the DHS staff in another county. When asked about her actions, the mother admitted she "had demonstrated poor judgment by allowing her [child] to be in a filthy motel room . . . where methamphetamines were found." She told the assigned child protective worker she "had had relapses over the years and had made a series of bad choices." She stated some of her treatment was "a joke" and that inpatient treatment "would cause her to use meth" and that she believed "she only needed to get a job, and get her [child] back." A child-in-need-of-assistance (CINA) case was opened, with the child ultimately being placed with her paternal grandparents.

In April 2014, while the 2012 CINA case was pending, the mother was arrested for a domestic incident involving a seventeen-year-old child—not at issue here. It was reported that the mother—while intoxicated—had punched and tried to choke the child.

In or around August 2014, the mother was released from jail and entered an inpatient substance-abuse-treatment program. At the end of the year, a guardianship was created placing the child at issue in the guardianship of her paternal grandparents. The CINA case was closed in January 2015.

In November 2015, presumably after completing her one-year-treatment program, the mother filed a motion in probate court seeking visitation with the child, and her motion was granted in January 2016. After several months of regular visitation, the child "desire[d] to reside with the mother." Because "there [were] no safety concerns with the mother and all parties [were] in agreement" with placing the child back in the mother's care, the probate court terminated the guardianship. The mother's probation ended in or about September 2016.

In 2017, it was reported that the mother had been acting in a manner consistent with methamphetamine use and that methamphetamine had been seen in the mother's home. Once again, the child was reportedly living in deplorable conditions and not attending school. Again, when concerns were raised about the child's safety, the mother fled with the child to another town. The mother enrolled the child in school in the new town, but the child was removed from the mother's care from the school and placed in the care and custody of the DHS. The State filed a CINA petition in December 2017. The mother admitted she had relapsed but maintained she was "open and willing to attend substance abuse treatment and individual therapy." But the juvenile court noted in its March 2018 dispositional order the mother had "been slow to engage in services." The court pointed out that the mother "refused to comply with [the DHS's request for a] drug screen patch." Though she obtained two substance-abuse evaluations that recommended she participate in intensive outpatient treatment, the mother did not start treatment, giving various but questionable reasons. The mother was consistent on her visits with the child, but she was almost always late, much to the child's frustration. As time passed, the mother's behaviors worsened rather than improved. Then, in August 2018, the mother was charged with possession and manufacturing of methamphetamine after she left methamphetamine in her hotel room's safe. She was later arrested for trying to make a purchase with a fraudulent bill. The mother was placed in jail and services and visitation ceased.

In March 2019, the mother pled guilty to two felony offenses—forgery and possession of a controlled substance with intent to deliver as a lesser included offense. She was sentenced to consecutive terms in prison, five years for forgery

and ten years for the drug offense, for a total period not to exceed fifteen years. The State then petitioned for termination of the mother's parental rights in April 2019.

The termination-of-parental-rights hearing took place in May and June 2019.[1] Prior to it, the mother requested to be physically present and transported to the hearing, but the juvenile court ultimately denied the request. The mother was present by phone during the hearing and testified. Her counsel was physically present at the hearings and represented her diligently. The mother made no claim that she would be unable to participate meaningfully in the termination hearing by telephone, with the physical presence of counsel at the hearing, nor did she assert she could not fully present her case.

In her testimony, the mother admitted the child could not be placed in her care at that time. She requested the court again create a guardianship and place the child with her paternal grandmother as the child's guardian rather than terminate her parental rights. The mother believed her incarceration would be short, anticipating she would be released into an offender-treatment program within the year. The mother expressed:

> My intention is to have my daughter be safe and secure where she is at this time with a guardianship. I will do everything that I can while I'm in here for the short time that I am in here with the wages that I will be making . . . to help support her with the eventual return back to me quickly as possible because I know that she wants her mom and her mom wants her.
> My daughter's very much loved, and I know that you guys don't disagree with that. My intentions is to become the best parent that I can be because I haven't been in the past. And I know that. I look at myself every day and I live with that as my daughter does.

---

[1] Curiously, the transcripts are not paginated.

So now I'm doing things that I've never done before as far as opening up . . . .

The mother testified she did not believe the child "would be able to cope with" the termination of the mother's parental rights.

It was reported at the termination hearing that the child, age twelve at the time, preferred a guardianship and did not want her mother's parental rights terminated. The child's attorney advocated guardianship be selected as the permanency option in the case:

> My client is smart enough and has an understanding of what is safe for her and what is not safe for her. The way the State is talking about a termination versus a guardianship makes it sound like this mother can come in and take this child whenever she wants to. And that is not the case.
>
> We have safeguards in place. She would have to petition the court. She would have to prove that she is able to parent this child for the guardianship to end. She is with a safe and protective family member for her, not only emotionally, but is keeping her physically safe. We are relying on a lot of "what ifs."
>
> There is a chance that Mom won't get to talk with my client again and, most importantly, my client won't have a relationship with her mother. That is a giant what if. That is not permanency. The guardianship is there. Again, the legislature has decided that it is a form of permanency, and that is what my client wants. She does not want termination to happen. She understands that the bond can be broken with her parents and understands how detrimental that can be to her and her life going forward. This is not coming down to the adoption part of it. This is coming down to the actual termination of what that means to my client.
>
> Although she is not fourteen, she is very smart for a twelve-year-old. She has gone to over thirty sessions with her therapist. She is safe, she is protected, and she will continue to be safe and protected with the guardianship. If Mom can get her life together and be clean and sober the way we want her to, then we want her to have the opportunity to parent her child again. If she is not clean and safe and sober, then the guardianship would not end because the court can ensure the safety of my client.

The child's guardian ad litem did not think a guardianship was in the child's best interests:

Weighing all the options, I do believe that it is in [the child's] best interest that her mom's rights get terminated. Certainly that will result in a short-term disappointment, trauma to [the child] because of her wishes that have been stated since the beginning of this case. . . . I do believe that long term giving her the stability and the permanency that will come with an adoption is best for [the child].

. . . .

[W]e have to look at the long-term stability of [the child]. I know that [her grandmother] has been going above and beyond for [the child] for a long time. And I believe that the only stability and consistency that [the child] has had in her life is that stability that [her grandmother] has been providing. I think not proceeding with termination and adoption could result in a lot of disruption in [the child's] life . . . . And it's unfortunate that there has been that disruption in [the child's] life so far; that she had experienced that before. So weighing all the factors . . . the short-term and long-term best interest. Like I said, short term there may be disappointment, but long term, I believe that there would be a lot of benefit to terminating her mom's rights and proceeding with an adoption.

After considering the evidence, the juvenile court determined the mother's parental rights should be terminated. The mother appeals.

## II. Discussion.

The mother contends the juvenile court erred in four respects, arguing (1) she had a constitutional due process right to be present at the termination-of-parental-rights hearing, (2) she should have been transported to the hearing under Iowa Code section 622.82 (2019), (3) termination of her parental rights was not in the child's best interests, and (4) the factors in section 232.116(3) should have been found applicable and overcome the need for termination of her parental rights. We address her claims in turn.

### A. Due Process.

Both the Federal and State Constitutions provide no person shall be deprived of life, liberty, or property, without due process of law. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9. Here, the mother asserts her due process

claim under both constitutions. "'We jealously guard our right to construe a provision of our state constitution differently than its federal counterpart, though the two provisions may contain nearly identical language and have the same general scope, import, and purpose.'" *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019) (citation omitted); *accord* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9; *In re C.M.*, 652 N.W.2d 204, 211 (Iowa 2002). The mother has not articulated a different test or standard under the Iowa Constitution. Thus, we choose to not interpret the Iowa Constitution any differently from the United States Constitution. *See In re J.C.*, 877 N.W.2d 447, 452 (Iowa 2016) (concerning a juvenile delinquency petition).

"'The relationship between parent and child is constitutionally protected." *In re M.S.*, 889 N.W.2d 675, 678 (Iowa Ct. App. 2016) (cleaned up) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978)). Even so, the DHS and the juvenile court have the important function of protecting children who need assistance. *See in re A.M.H.*, 516 N.W.2d 867, 870-71 (Iowa 1994). Yet the fundamental liberty interests of biological parents in the care, custody, and management of their children do not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State. *See In re S.J.*, 451 N.W.2d 827, 830 (Iowa 1990); *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982) (citing *Santosky v. Kramer*, 445 U.S. 745, 753 (1982)). Providing a parent due process helps protect a parent's interest in maintaining his or her family's integrity. *See A.M.H.*, 516 N.W.2d at 870. But "the process due in each case is flexible depending on the particular circumstances." *In re M.D.*, 921 N.W.2d 229, 235 (Iowa 2018); *see also A.M.H.*, 516 N.W.2d at 870.

Recently, the Iowa Supreme Court considered "how much process is due to incarcerated parents who face a hearing to terminate their parental rights" in *M.D.*, 921 N.W.2d 229 at 230-46. Though the incarcerated parent in *M.D.* "did not ask [the supreme court] to recognize a due process right for incarcerated parents to be physically present at a termination hearing," the court essentially answered the question:

> [W]e adopt the standard that juvenile courts in this state must give incarcerated parents the opportunity to participate from the prison facility in the entire termination hearing by telephone or other similar means of communication that enables the parent to hear the testimony and arguments at the hearing. The interests of the parent, the child, and the state support this opportunity. In particular, it serves the compelling interest of the parent to hear the evidence offered in support of a termination petition and to respond effectively to the evidence. We agree with the observations by other courts that parents normally have unique and exclusive knowledge of evidence concerning the termination. After all, their conduct is at issue. The risk of error is too great if a parent does not have the opportunity to hear this evidence and to formulate a response to it.
>
> The opportunity to participate by telephone means the juvenile court must preside over the proceedings in a manner that will best meet this standard. . . . We, of course, recognize that circumstances may arise that will challenge the juvenile court's ability to enable a parent to participate in the entire hearing, such as restrictions imposed by prison officials limiting the ability of the incarcerated parent to be available for the entire hearing. . . . In the event prison officials from other states, or other circumstances, do not permit the standard to be met, the juvenile court shall provide an alternative process that allows the parent to review a transcript of the evidence offered at the hearing.

*Id.* at 236. Under *M.D.*, the only process due the mother in this situation was for her to participate in the entire termination hearing by telephone from the prison. *See id.*

Here, the mother participated in the entire hearing by telephone and was represented by counsel at the hearing. Under the facts of this particular case, it is

clear the mother was provided due process in the matter of the termination of her parental rights. So the mother's constitutional rights were not violated when she could only participate telephonically. Upon our de novo review of the record and legal analysis, we concur with the juvenile court's conclusion the mother received the process she was due in the case—participation in the case by telephone. Insofar as the mother requests we overrule our supreme court's precedent, we are not at liberty to do so, even if we were inclined—we are not—to agree with the mother's position. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Court. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). For all these reasons, was affirm the juvenile court's ruling on this issue.

### B. Iowa Code Section 622.82.

Iowa Code section 622.82 provides:

> A person confined in a penitentiary or jail in the state may, by order of any court of record, be required to be produced for oral examination in the county where the person is imprisoned, and in a criminal case in any county in the state; but in all other cases the person's examination must be by a deposition.

Relying on section 622.82 and public policy reasons for preferring in-person testimony, the mother argues the court erred in denying her request to be transported to and be present at the termination-of-parental-rights hearing. Our supreme court faced a similar question in a postconviction-relief action and rejected the applicant's assertion that section 622.82 gave the applicant the "right

to attend his postconviction proceeding." *Webb v. State*, 555 N.W.2d 824, 825 (Iowa 1996). The court explained:

> We are not persuaded by Webb's attempts to argue that the words "produced for oral examination" mean personal attendance at the hearing. But even assuming such language means personal attendance, other language in section 622.82 and also Iowa Code section 822.7 clearly indicates refusal to allow Webb personal attendance at the postconviction hearing was properly within the district court's discretion. Section 622.82 states an inmate "*may* be required to be produced for oral examination" . . . .
> The district court's discretion to exclude an inmate from personally attending a postconviction hearing has been recognized by this court . . . . [T]he court stated that a postconviction hearing need not include the applicant's testimony, particularly in the absence of proof that applicant's attendance was necessary. There is no proof that Webb's attendance was necessary. At the hearing he merely asserted the reason he wanted to be present was that the telephone lines were "unsecured." However, Webb was informed the hearing was not confidential and would be reported. . . .
> Webb's right to due process did not include attendance at the hearing but did require "fundamental fairness" in the proceedings. Webb does not deny that he received advance notice of the hearing and telephone conference, that he was represented by counsel at the hearing, and that he was given an opportunity to present testimony orally by telephone. Under these circumstances he was accorded the fundamental fairness due to him.

*Id.* at 826 (internal citations omitted).

The juvenile court's decision to grant or deny the mother's request to physically attend was discretionary under section 622.82. As in *Webb*, there was no allegation or indication that the mother's physical attendance at the hearing was necessary. She was represented by counsel and got to present testimony and evidence telephonically. She was entitled to due process, and she received the process she was due with telephonic participation in the entire proceeding. Under the facts of the case, we cannot say the court erred or abused its discretion in

declining to grant the mother's request to attend the hearing pursuant to section 622.82.

### C. Iowa Code Section 232.116.

We generally use a three-step analysis to review the termination of parents' rights. *A.S.*, 906 N.W.2d at 472. We determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *See id.* at 472-73. But if a parent does not challenge a step in our analysis, we need not address it. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, the mother does not contest the grounds for termination. Rather, she argues a guardianship with the grandmother rather than termination of the mother's parental rights is the right course of action.

In determining whether the termination of a parent's parental rights is in a child's best interest, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *Id.* at 37 (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Even if termination may be in a child's best interests, the relationship need not be terminated if any of the following apply:

> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.

Iowa Code § 232.116(3). "A finding of any of these factors allows the court to avoid terminating parental rights, but the factors 'are permissive, not mandatory.'" *A.S.*, 906 N.W.2d 475.

Here, the juvenile court agreed with the child's guardian ad litem and the DHS that termination of her parental rights was in the child's best interests under the facts of the case. The court found:

> There is a loving bond between the child and the mother as they have maintained consistent weekly telephone contact. However, that bond, given the totality of this record and the trauma endured by the mother's drug use and lack of protective capacity, is not such that the court finds by clear and convening evidence that the termination would be more detrimental to the child. The child, while only twelve years old, is mature beyond her years due to the trauma she has experienced. She is also, at best, conflicted with the love of her mother and the love and stability afforded to her by her grandmother. It is likewise apparent, giving her young age, she may not fully understand what permanency looks like for her, albeit not wanting to be adopted. She has consistently reported to her therapist that she does not want to be adopted, but the reporting is silent on the matter of termination. While the child remains optimistic about her mother's recovery and achieving long term sobriety, the mother's prior history reflects the contrary. The mother's reported sobriety during her term of incarceration is not an indicator of her ability to maintain sobriety in the community, which over years, she has demonstrated an inability to accomplish.

Upon our review, we concur with the juvenile court's assessment.

A useful marker for a parent's future performance is that parent's past behavior. *See In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). Sadly, this case corroborates this maxim. The mother has a long record of substance abuse and criminal activity. Having her parental rights terminated to three children almost twenty years ago did not stop the mother from engaging in substance abuse and criminal activity that again landed her in prison. Nearly having her rights to this

child terminated in 2014 did not stop the mother from engaging in substance abuse and criminal activity that again landed her in prison.

When the mother has relapsed in the past, she has not sought out help, but she has required others to intervene to protect and care for her child. When the family raised concerns with the mother about her actions at the start of this case, rather than seeking help, the mother again fled with the child. Then, after the DHS became involved, and rather than admit her problems and immediately seek treatment, she minimized her addiction and her usage, and she blamed others for her actions or lack of action.

The notes throughout this case show how the mother's actions have hurt the child. We understand and appreciate the child's reported desires. But it is clear from the record that what the child desires is not simply that her mother's parental rights be retained; the child wants that along with a mother that is sober and abstains from crime. A guardianship over termination of parental rights cannot make that happen. In fact, "'a guardianship is not a legally preferable alternative to termination.'" *A.S.*, 906 N.W.2d at 477 (citation omitted).

We do give the mother some credit for her periods of sobriety, but the mother, even considering her important, fundamental constitutional rights, is not the focus here. The focus must be her child. The mother has continued to put her own needs and desires before her child. Continuing court involvement in the child's life is not in her best interests. This child deserves permanency. Given the mother's history and hearing testimony, we do not think a guardianship can achieve the permanency the child needs.

In the end, the mother will still be the child's biological mother. While the child is a minor, her guardian or adoptive parent can allow the child to have some kind of a relationship with the mother if the guardian or parent believes it is in the child's best interests, and the focus can be on allowing this child to grow up as healthy and happy as possible.

We hope the mother's latest treatment attempts succeed and she can become the parent this child deserves. But the child has waited long enough. Upon our de novo review of the record, the State established termination of the mother's parental rights was in the child's best interests. We also agree with the juvenile court's determination that factors in section 232.116(3) should not prevent termination of the mother's parental rights.

### III. Conclusion.

Upon our de novo review of the record, the mother's constitutional due process rights were not violated when the court denied her request to be physically present at the termination-of-parental-rights hearing. Similarly, Iowa Code section 622.82 did not require the court to grant the mother's request to be present at the hearing, and we find no error or abuse of the court's discretion in denying the mother's motion. Finally, we agree with the juvenile court that the State proved by clear and convincing evidence that termination of the mother's parental rights was in the child's best interests and the exceptions to overcome termination of her rights should not be applied based on the facts of the case. So we affirm the juvenile court's ruling in all respects.

**AFFIRMED.**

Schumacher, J., concurs; Tabor, J., concurs specially.

**TABOR, Judge** (concurring specially).

I agree with the majority's well-reasoned decision to affirm the termination of the mother's parental rights. I write separately to illuminate two points about the mother's physical absence from the termination hearing.

First, I disagree *In re M.D.* settled the question of whether a juvenile court violates a parent's constitutional rights by rejecting her request to attend the termination-of-parental-rights hearing in person. 921 N.W.2d 229, 234 (Iowa 2018) (explaining "mother did not ask us to recognize a due process right for incarcerated parents to be physically present at a termination hearing"). But our court has held a father was not denied due process when the juvenile court overruled his motion to be transported to the termination hearing. *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991). So I agree we should follow that precedent until our supreme court takes a different stance.

Second, on the statutory claim, I agree the juvenile court had discretion to order the mother "to be produced for oral examination" in the county where she was imprisoned. *See* Iowa Code § 622.82 (2019). The mother was incarcerated at the Iowa Correctional Institution for Women in Mitchellville, which is in Polk County. Section 622.82 "provides a method of getting inmates to court." *State v. Kile*, 313 N.W.2d 558, 563 (Iowa 1981). In a May 7 order, the juvenile court exercised its discretion under that statute to order the Polk County Sheriff to transport the mother for the May 10 termination hearing. But, on May 9, the court rescinded that transport order, saying only its change of heart came "upon further review and being advised of the premises."

In the petition on appeal, mother's counsel states that the court denied her request to attend the hearing in person after "a representative of the Department of Corrections (DOC) at Mitchellville contacted the Court and indicated that they were unwilling to transport the Mother." By contrast, counsel for the State responds it is "unclear from the record available" why the juvenile court denied the mother's motion. Similarly, we are unable to find the court's statement about the DOC's unwillingness to transport the mother in our record.

But if the representation of mother's counsel is true, it is troubling. Deciding whether a person may attend a hearing on the termination of her parental rights being held in the county where she is imprisoned is not within the mandate of the executive branch. *Cf. Myers v. Emke*, 476 N.W.2d 84, 86 (Iowa 1991) (holding district court lacked authority to order removal of inmate from Iowa State Penitentiary in Lee County so he may appear and testify in his own behalf in civil suit filed in Wapello County because court was "without power to invade the executive department's control"). Rather the determination whether to transport the mother from Mitchellville to Des Moines fell within the court's purview under section 622.82.

Here, the record does not show the juvenile court abused its discretion in rescinding its transport order. I thus concur in the majority's opinion.